Action by Paul C. Porcker contesting the admission to probate of the last will and testament of Nick Chongas, deceased. There is no dispute as to most of the facts. On March 1, 1946, Nick Chongas, a resident of Ogden, Weber County, Utah, executed a will in which he bequeathed all *Page 97 
his property, then consisting of personalty worth about $24,000, to his half-brother, Paul C. Porcker, the contestant. Ten days later the testator was committed to the Utah State Mental Hospital at Provo by the district court in Salt Lake County upon the affidavit of Porcker that his brother was insane. Later the same court appointed Porcker guardian of the person and property of Chongas. Nick's stay at the mental hospital was brief; sometime prior to June 30, 1946, he was released from that institution on probation to William Lepas, his friend. The following November 1, Nick was adjudged sane and restored to capacity by the district court in Salt Lake County over the protests of Porcker. The mental hospital subsequently filed a notice of release in that court stating that Chongas' condition was "improved." It was about this time that Nick began conversing with H.A. Soderberg, an attorney, concerning changes he desired to make in his will. Soderberg, who is one of counsel for the respondent in this action, had drawn the will which Nick had executed in March. Finally on January 23, 1947, Nick came to Soderberg's law office, informed him of the changes he desired in his will, and directed Soderberg to draft a new will in which one dollar was to be bequeathed to Porcker, and the balance to be divided evenly among Lepas and Nick's brothers and sister who were, when last heard from, living in Greece. Nick did not at that time execute the new will, but on February 3, while hospitalized in Ogden for diabetes, requested that the will be brought to him. Soderberg, accompanied by Lepas and one Theodore Stamos, a friend of the testator, went to the hospital. There Chongas executed the will, Stamos and Soderberg acting as witnesses. Ten days thereafter Nick was again committed to the state mental hospital, this time by the district court in Weber County upon the sworn testimony of Lepas and at Chongas' request. Shortly thereafter letters of guardianship were issued to Lepas. Sometime during the spring of 1947 Chongas was released from the mental hospital and on the following September 26, the district court in Weber county adjudged him restored to capacity. Early in 1948 Chongas *Page 98 
was admitted to the County Hospital of Weber County for Indigent Persons where he died on March 26. The following day J. Francis Fowles filed a petition in the court below for probate of the will, praying that he be appointed executor of said estate by virtue of being named as such in the will of the deceased. On April 10, Porcker filed a petition contesting the admission of the will to probate, alleging that the deceased at the time when he executed it was not of sound mind. Upon trial the lower court directed a verdict against the contestant, from which he appeals.
The precise question for us to determine is whether there was sufficient evidence to require the submission to the jury of the question of testamentary capacity. The rule is well established in this jurisdiction that if the evidence with all reasonable inferences and intendments that can be drawn therefrom could sustain a verdict for the party against whom a motion for directed verdict is made, the cause should be submitted to the jury. Nielson v. Hermansen, 109 Utah 180,166 P.2d 536; Mingus v. Olsson, 114 Utah 505, 201 P.2d 495.
The determination of testamentary capacity has been the subject of much authorship. Textbooks and cases are replete with definitions and formulae. Various tests have been suggested by the courts. Thompson on Wills, 3rd Ed., Sec. 59, p. 104, announces that the test almost universally applied is:
"(1) the testator must be able to understand the nature of the business in which he is engaged at the time he makes his will, (2) to have a decided and rational desire as to the disposition of his property, and (3) to appreciate the effects of the disposition made by him of his property."
This court has heretofore stated that
"The true test is as to whether the testatrix had `sufficient mind and memory (at the time of making the will) to remember who were the natural objects of her bounty, recall to mind her property, and dispose of it understandingly according to some plan formed in her *Page 99 
mind.'" In re Hanson's Estate, 87 Utah 580, 52 P.2d 1103, 1116;Burgess v. Colby, 93 Utah 103, 71 P.2d 185.
The law of wills recognizes degrees of mental unsoundness, not all of which are sufficient to destroy testamentary capacity. Ordinarily a person may lack sufficient capacity to transact his ordinary business affairs and yet have capacity to make a will. He need not have sufficient mental capacity to enter into complex contracts or engage in intricate business in order to have sufficient capacity to make a will. Capacity to transact business generally and to carry on difficult negotiations are not essential to testamentary capacity. In reSexton's Estate, 199 Cal. 759, 251 P. 778.
With the aforesaid principles in mind, an examination of the evidence has convinced us that the lower court did not err in taking the determination of the contest from the jury. The testimony and circumstances in support of the testator's capacity are strong. The witnesses to the will both testified that Chongas was of sound mind on the day the instrument was executed. Mr. Soderberg, having aided in procuring the testator's restoration to capacity in the autumn of 1946, and having discussed the changes desired by the testator in his will several times before it was finally executed, had an excellent opportunity to observe Chongas over a period of months. J. Francis Fowles, who likewise had observed the testator for several months immediately preceding the execution of the second will, corroborated the testimony of Soderberg as to Chongas' sanity. Upon hearing the will read to him as he lay in a hospital bed, Chongas detected that his brother, Christ, had been omitted from the names of the legatees by Soderberg. After the correction was made the testator requested Stamos to read him the will in the Greek language. The testator's reasons for disinheriting his half-brother were not without basis. Mr. Soderberg testified that Nick was very bitter toward Porcker because the later had put him *Page 100 
in the mental hospital just a few days after Nick had paid him $1000 to care for him in Porcker's home. Chongas had been put to considerable expense in securing his restoration to sanity which Porcker had opposed. This court In re Hansen's Will, 52 Utah 554,177 P. 982, 987, said that
"if there are any facts, however little evidential force they may possess, upon which the testator may in reason have based his belief [that his relative have ill treated him], it will not be an insane delusion, though on a consideration of the facts themselves his belief may seem illogical and foundationless to the court; for a will, it is obvious, is not to be overturned merely because the testator has not reasoned correctly."
The evidence adduced by the contestants in their favor has little or no probative value as to the incompetency of Chongas to execute a will when we keep in mind the meaning given to "testamentary capacity" by this court in the Hansoncase, supra, and by authorities generally. Andrew Meintatis, an old acquaintance of the testator, testified that he saw Chongas for the first time in two or three years about six weeks before he died. The witness described him as "jumpy," "not coherent," and "not all there," although he admitted he may have been mistaken about it. It must be remembered that Chongas was at this time suffering from diabetes from which he died shortly thereafter. Meintatis had been told that the testator had been in the mental hospital, but when asked whether he formed his opinion of Chonga's sanity with that fact in mind, he ignored the question completely. William Palitsas, who managed a hotel where Chongas resided for several months prior to his commitment to the mental hospital in 1946, testified that the testator had "no mind at all." Any probative value this testamony might have had was all but destroyed by the order of the district court of Salt Lake County restoring Chongas to capacity. William Beezley testified that Mr. Fowles had told him in January of 1947 that "Chongas is as crazy as a bedbug." Mr. Fowles denies making such a statement, but assuming that he did, it is nothing more than a cliche and is virtually meaningless upon *Page 101 
the question of testamentary capacity. Similar expressions are frequently used in descriptions of persons of eccentric or unusual habits. Chongas' recommitment to the mental hospital and Lepas' subsequent appointment as guardian of the person and property of Chongas are without weight upon the question of capacity since there was not at either time an adjudication of insanity. He was allowed to return to the hospital at his own request in order that he might obtain insulin and other care for his diabetic condition after he had been refused admission to the Weber County Infirmary. The most that can be drawn from the evidence favorable to the contestant is that Chongas was somewhat eccentric and erratic, and ultra-thrifty to the point of being stingy. There is nothing which indicates that he at any time was unable to recall to mind the property he owned, to remember the natural objects of his bounty, and to dispose of his property according to some rational plan. In re Hanson's Estate, supra;Burgess v. Colby, supra.
The appellant also cites as error the refusal of the lower court to admit in evidence a "physician's certificate" made by a physician as a part of the proceedings in committing Chongas to the mental hospital in March of 1946. From it the appellant claimed a right to show that the testator had been diagnosed as suffering from dementia praecox, and to base upon that diagnosis expert testimony that Chongas could have never thereafter been sane. Without discussing the many objections to the certificate raised by the respondents, we hold that the exclusion was, if error at all, harmless, as any probative value contained in the diagnosis was destroyed when the testator was restored to capacity some months later after a hearing in open court.
Judgment affirmed. Costs to respondents.
PRATT, C.J., and WADE, LATIMER and McDONOUGH, JJ., concur. *Page 102