# In re BUTTARS ESTATE

No. 7945.   Decided Sept. 26, 1953.   (261 P. 2d 171.)

George C. Heinrich, Logan, for appellant.

L. E. Nelson, George D. Preston, Logan, for respondent.

WADE, Justice.

This is an appeal from a judgment notwithstanding a verdict by a jury in a Will contest that Emma G. Buttars, the testatrix, did not have a sound and disposing mind at the time she made her Will.

The contestants and appellants herein are grandchildren of the testatrix and the children of her eldest son who had predeceased her. In her Will testatrix named all her living children leaving them her estate in equal shares and providing that if any of them should predecease her the children of such child should take the share of the predeceased child. But to the children of her eldest son who had died about a month before she had made the Will she left only a dollar each giving as her reason that her oldest son had borrowed money which had not been repaid and that the sum owed would amount to more than his share in her estate. The Will was executed in March, 1945, and testatrix passed away in July, 1952, when she was about 87 years old.

Proponents of the Will produced testimony by the two witnesses to the Will, one of whom was the attorney who drew up the Will and the other his then secretary, that the testatrix was alone with the attorney when she told him of how she wanted to dispose of her property. She waited in the attorney's office, while the secretary typed the Will. After the Will was prepared it was read to her by the attorney and the testatrix then signed the instrument in the presence of her witnesses and remarked

that was the way she wanted her Will and asked them to sign as witnesses which they did in her presence and in the presence of each other. The witnesses had never met the testatrix before she appeared at the attorney's office and requested him to draw a Will for her. When asked whether she had a memorandum to aid her in disposing of her property to the beneficiaries she named, the attorney testified that he could not recall that she had and that he also could not recall whether she had discussed the extent or value of her property with him. Both witnesses testified that from their observation of her in the office she appeared to know what she was doing and that she was not acting under any fraud, duress or undue influence. By this evidence the proponents made out a prima facie case entitling the Will to be admitted to probate and it then became incumbent on the contestants to prove by a preponderance of evidence that the testatrix did not have a sound and disposing mind at the time she executed the Will or that she was acting under fraud, menace or undue influence. *In re Hanson's Will*, 50 Utah 207, 167 P. 256.

At trial the jury returned a special verdict wherein they found that at the time testatrix subscribed the instrument proposed for probate as her Will she was not of sound and disposing mind, but that she was not acting under any fraud or undue influence. Notwithstanding this verdict the court admitted the instrument to probate as the Last Will and Testament of testatrix. This being a law case it was a question of fact for the jury to decide whether testatrix had a sound mind at the time she executed her Will. *In re Hanson's Will*, supra. Since the jury found that she did not have a sound and disposing mind at that time, it would have been error for the court to have admitted the proposed instrument to probate, if the evidence, viewed in the light most favorable to contestants, would have reasonably permitted such finding. Mere eccentricities and lack of a keen mind or ability to conduct ordinary business may not prove a lack of testamentary capacity. As stated by

then Justice Wolfe in *In re Hanson's Estate,* 87 Utah 580, 52 P.2d 1103, on page 1116:

"* * * A person may not be capable of conducting ordinary business because not trained in it or even if incapable mentally may in cases be capable of making a simple will. The true test is as to whether the testatrix had 'sufficient mind and memory (at the time of making the will) to remember who were the natural objects of her bounty, recall to mind her property, and dispose of it understandingly according to some plan formed in her mind.' * * *"

See also *In re Swan's Estate,* 51 Utah 410, 170 P. 452. With these rules in mind we shall review the evidence.

The record discloses that at the time the Will was made testatrix was about 80 years old and had been brought to the lawyer's office by Wallace Buttars, her youngest son, who was named executor in the Will. In order to reach the attorney's office she had to ascend a steep flight of stairs. After reaching the office, Wallace left her alone there and went down to the street while she transacted the business she came for and then came back and got her when the attorney went down and informed him his mother was ready to leave. Testatrix lived in Clarkston, Utah and was unable to drive a car so whenever she wanted or needed to go to Logan, Utah, Wallace or infrequently one of her daughters, would drive her there.

Sometime in 1940, testatrix who was then 75 years of age became very ill and was hospitalized for a number of weeks suffering from kidney troubles, high blood pressure and hardening of the arteries. After she left the hospital her memory appeared poorer. She did not recognize some of her grandchildren who had been away for some years on missions for their church or had been in the armed services, when they visited her upon their return. She suffered a great deal from headaches and would often repeat the same subject in her conversation. She accused some of her daughters of taking and borrowing things when they hadn't. She would forget where she hid things. Once she hid the silver-

ware in bed, and other times she hid edibles such as fruit, salmon, or vegetables in the living room bookcase. She became weaker physically and as time went on she depended more and more on Wallace to aid her in her business transactions, although he was not with her when she made her transfers of her stocks and purchased bonds for her daughters. Testatrix was again hospitalized in 1944, this time for pneumonia, and that year her children held a meeting to discuss her condition. At that meeting an older son suggested that a guardian should be appointed because in his opinion their mother was not physically or mentally capable of handling her affairs. None of the other children wanted this done, so it was agreed that the children would take turns coming to their mother's home to help take care of her and that Wallace would continue to look after her business interests. One of the daughters testified that although in 1950 it was arranged that they should be paid for their services and the mother signed the checks for that and other necessities she did not think her mother knew what she was doing or knew what property she had.

When the eldest son of testatrix died she showed no emotion at his funeral and about a month later executed the Will which is contested herein, wherein she stated that the reason she was leaving his children only $1.00 each was because their father had failed to repay a loan of $1500 which was more than would have been his share of her estate. In this connection it is noted that his share, if it were equal to that of his brothers and sisters, would have amounted to about $8000 and that there was also evidence that the loan was probably repaid, even though testatrix had retained the note and mortgage evidencing the loan. It should be further noted that there was evidence that in the notices of her eldest son's death testatrix was not mentioned among his survivors and that this hurt her very much.

Testatrix had always been a frugal woman who believed that one should earn what he received. Shortly after she

executed her Will she made conveyances of a considerable part of her real property to Wallace and two of her younger daughters who lived near her. She also assigned some valuable bank stock and bought U.S. Savings Bonds for these daughters, giving as her reason for doing so that they had received worthless stock from their father's estate, of which she was one of the administrators, as part of their share in his estate. This stock was not worthless at the time of the distribution but became so within a few years thereafter. By 1951, Wallace was made his mother's agent on her checking account and she also made him a joint tenant on her savings accounts.

The uncontradicted testimony of friends, neighbors and tradesmen was that in their contacts with testatrix even after her illnesses she always appeared neat and understood what she was talking about; that she always knew what she wanted or needed and would take nothing else. The doctor who attended her in her illnesses and who saw her on the average of at least twice a year since her illness in 1940 until her death, testified that in his opinion she was competent during all that time except in March, 1952, a short time before she passed away, at which time she was extremely ill.

The jury did not find that the Will was executed under any undue influence or fraud. The evidence related above is proof that testatrix was eccentric in her actions and forgetful at times of some things, but is utterly insufficient to sustain the contestants' burden of proving by a preponderance of the evidence that she lacked testamentary capacity at the time she executed the Will. This is especially so in view of the positive testimony of the subscribing witnesses that she appeared to know what she was doing at that time and that she was alone with the lawyer when she made her wishes known, since the Will itself shows she remembered who were "the natural objects of her bounty" and that she disposed of her property "understandingly ac-

cording to some plan formed in her mind." There being no question of fraud or undue influence in the formulating and relation of that plan to the lawyer, the mere fact that at times she was forgetful and eccentric and was weak physically and that after she made her Will she disposed of a good portion of her property after a lifetime of careful saving is no proof that at the time of making her Will she lacked testamentary capacity. The court therefore did not err in admitting the Will to probate in view of the complete lack of evidence that at the time of making the Will testatrix lacked the mind to understand what she was doing.

Affirmed. Costs to respondents.

WOLFE, C. J., and McDONOUGH, CROCKETT and HENRIOD, J.J., concur.