[Civ. No. 22983.   Second Dist., Div. Three.   Oct. 14, 1958.]

Estate of ESTELLE CHRISTINE GODDARD, Deceased. CATHERINE SHAFOR et al., Appellants, v. MARTHA L. HILANDS et al., Respondents.

Gladys Towles Root and Eugene V. McPherson for Appellants.

Harold E. Allport, Jr., Scudder & Forde, Tanner, Odell & Taft and A. G. Ritter, for Respondents.

PATROSSO, J. pro tem.*—This is an appeal from a summary judgment dismissing a petition for the revocation of the probate of the will of the above named decedent.

The testatrix Estelle Christine Goddard died on September 29, 1956, at the age of 60 years, leaving surviving as her sole heirs, Catherine Shafor, a cousin, and Anna Goddard, the mother of the testatrix' predeceased husband.[1] An holographic will executed by the testatrix on March 22, 1948, was duly admitted to probate on October 29, 1956. Thereafter a petition to revoke probate thereof was filed by said Catherine Shafor and Anna Goddard who will hereinafter be referred to as contestants or appellants. The petition for revocation alleged five grounds of contest: (1) lack of testamentary capacity; (2) want of due execution; (3) undue influence alleged to have been exercised by Martha L. Hilands, the executrix and residuary legatee under the will; (4) fraud upon the part of said Martha L. Hilands and (5) that the will had been revoked by the testatrix prior to her death.

Answers to the contest were filed by the executrix and the other legatees under the will wherein they denied each and all of the allegations thereof.

Following the filing of the answers the respondents served and filed a notice of motion for summary judgment pursuant to the provisions of section 437c of the Code of Civil Procedure

---

*Assigned by Chairman of Judicial Council.

[1] We assume, although there is no evidence to this effect, that Anna Goddard was an heir by virtue of either section 228 or 229 of the Probate Code, as no claim to the contrary is made by the respondents.

supported by two affidavits, one by the executrix and the other by H. E. Allport, her attorney, who had also been the attorney for the testatrix during her lifetime. In opposition to this motion, the appellants filed an affidavit of Grace Lighty, the sister of the testatrix' predeceased husband. At the hearing of the motion for summary judgment it was stipulated that the deposition of Dr. Francis M. Smith, Alta Davidson and H. E. Allport, Sr., might be considered as affidavits on behalf of the moving parties and that the deposition of the appellant Anna Goddard might be considered as a counteraffidavit on behalf of the appellants.

By the affidavits and depositions upon behalf of the respondents it was made to appear (1) that at the time of the execution of the will the testatrix was of sound mind and possessed testamentary capacity; (2) that the will was entirely written, dated and signed in the handwriting of the testatrix and was found among her effects after her death, in an envelope addressed to her attorney; (3) that the respondent Martha L. Hilands never discussed with the testatrix the making of the will; that she never suggested to the testatrix that she make a will nor did she induce or persuade her to do so; that she never knew that the testatrix had executed a will until after it was executed and did not learn of the contents thereof until after the testatrix' death; (4) that the respondent Martha L. Hilands never made any representations to the testatrix with respect to the execution of the will and never conversed with the testatrix or advised her with respect to the disposition of her estate nor did she make any suggestions or representations with respect to the manner of the disposition thereof; and (5) that an examination of the testatrix' papers and personal effects failed to disclose the existence of any will other than the one admitted to probate except a prior will dated March 10, 1942, and likewise failed to disclose any writing, codicil or other instrument revoking or purporting to revoke the will so admitted to probate.

Directing our attention to the showing made by appellants in opposition to the motion for summary judgment by the affidavit of Grace Lighty and the deposition of Anna Goddard, we fail to find therein a single word of testimony to the effect that the will was not entirely written, dated and signed in the handwriting of the testatrix or that there was in existence any later will or other document revoking the same or

that the respondent Martha L. Hilands made any false representations to the testatrix in order to induce her to execute a will in her favor. Indeed, in the briefs in this court, appellants make no pretense that there was any showing of any such facts. Appellants' only claim is that the affidavit of Grace Lighty and the deposition of Anna Goddard contain statements of fact which if admitted to be true, as they must on the hearing of a motion for summary judgment, are sufficient to establish the existence of a triable issue as to testamentary capacity and undue influence.

In support of this contention they refer to the following statements in the affidavit of Grace Lighty: Subsequent to the death of her husband the testatrix would call Mrs. Lighty on the telephone and "cry bitterly" and when said affiant visited the testatrix the latter "appeared to be totally incapable of doing anything for herself;" that the respondent Martha L. Hilands "was constantly in touch with the" testatrix, "handling her business affairs, and in fact on one occasion your affiant received a call from Martha Hilands wherein Martha Hilands informed your affiant that she, Martha Hilands, was preparing the income tax returns for the deceased Estelle Christine Goddard because Estelle Christine Goddard could not do that herself; that around March of 1948, at the time your affiant had this conversation with Martha Hilands, your affiant called the deceased Estelle Christine Goddard back on the telephone and the telephone was answered by Martha Hilands. At that time Martha Hilands informed your affiant that your affiant could not speak to Mrs. Goddard because she, Martha Hilands, was handling Estelle Christine Goddard's affairs. That your affiant well and truly believes and is of the opinion that during the year 1948 Estelle Christine Goddard could not and did not handle any of her affairs, nor was she able at that time to make a Will uninfluenced by others."

With respect to the deposition of the appellant Anna Goddard, the testimony therein upon which appellants rely is to the effect that the testatrix was "Very, very nervous. She had to have everything done by someone. She couldn't do a thing alone. So, I think she was persuaded. . . . [S]he couldn't do anything for herself. . . . When she made out that will, yes, there was something wrong, absolutely. . . . I think she was very nervous and she cried most of the time, especially after my son [testatrix' husband] died, and I don't think she was really of a sound mind sometimes because I

seen her, I would talk to her over the phone, and she would cry and cry. So, I know that she really wasn't herself. She couldn't have been because it is so unjust to leave that to that one girl [Martha Hilands]. Very unjust.''

We fail to find in the foregoing any fact or facts which if testified to upon the trial would tend to establish that the testatrix did not possess testamentary capacity when executing her will or that the same was executed as the result of undue influence exerted upon her by the respondent Martha Hilands or any other person.

It is to be remembered that this is a contest after probate and that the admission of the will to probate " 'established *prima facie* for all the purposes of the contest, that it was duly executed in the manner required by law by a testator who was competent, free from undue influence, etc. The burden of proof was on the contestants to establish its invalidity.' (*Estate of Baird,* 176 Cal. 381, 384 [168 P. 561].) It is only when the contestant has established a *prima facie* case of the absence of testamentary capacity that the proponent of the will has the burden of meeting it. Testamentary capacity is always presumed to exist until the contrary is established, and the ultimate question is what was *actually* the testator's mental state at the time of the testamentary act, and not what it *may* have been.'' (*Estate of Russell* (1947), 80 Cal.App.2d 711, 714, 715 [182 P.2d 318].)

The test of the testamentary capacity has so frequently been stated by the decisions in this state that it seems hardly necessary to repeat it here. A testator has sufficient testamentary capacity if at the time he understands the nature of the act, the nature and situation of his property and his relations to those having claims upon his bounty. (*Estate of Arnold* (1940), 16 Cal.2d 573, 586 [107 P.2d 25].)

As has likewise frequently been said: "It is well settled that mere proof of mental derangement or even of insanity in a medical sense is not sufficient to invalidate a will, but the contestant is required to go further and prove either such a complete mental degeneration as denotes utter incapacity to know and understand those things which the law prescribes as essential to the making of a will, or the existence of a specific insane delusion which affected the making of the will in question. (*Estate of Shay*, 196 Cal. 355, 359 [237 P. 1079]; *Estate of Russell,* 189 Cal. 759, 769 [210 P. 249].)'' (*Estate of Arnold, supra,* 16 Cal.2d 573, 585-586.)

Where in the showing made by the appellants is there to be found anything even suggesting that the testatrix was mentally deranged or that she was laboring under an insane delusion when she executed her will? ▇ The mere fact that she grieved over the loss of her husband certainly does not constitute proof of mental derangement. The only other evidence to which the appellants point as constituting proof of lack of testamentary capacity is the affiant's belief or opinion, unsupported by any reason or specific fact, that the testatrix was unable to handle her own affairs and that she required the services of someone to prepare her income tax returns. ▇ However, as our courts have frequently had occasion to point out, the ability to transact business is not the legal standard of testamentary capacity. (*Estate of Sexton* (1926), 199 Cal. 759, 768 [251 P. 778]; *Estate of Powers* (1947), 81 Cal.App.2d 480, 483 [184 P.2d 319]; *Estate of Arnold, supra,* p. 586.)

▇ Liberally construed, the affidavits on behalf of the appellants fail to reveal any fact or facts from which it could be inferred that the testatrix, when executing her will, did not understand the nature of her act or that she was not cognizant of the nature and situation of her property or her relation to those having claims upon her bounty. Construing the statements in the affidavits on behalf of the appellants that the testatrix did not appear to be herself and that she was unable to handle her affairs as constituting expressions of opinion that testatrix was of unsound mind, they are wholly insufficient to establish that fact. As said in the *Estate of Collins* (1917), 174 Cal. 663, 670 [164 P. 1110]: "When, as in this case, the opinions as to unsoundness of mind, including those of the intimate acquaintances, are based on facts which show neither morbid delusion nor total mental incapacity, . . . the evidence is wholly insufficient to establish the fact."

In the *Estate of McGuirk* (1920), 50 Cal.App. 352, 355 [195 P. 279], it is said: "Nevertheless, and assuming further that his conduct justified the inference that his mental faculties were impaired and weakened to an extent which warranted the conclusion, as stated by witnesses, that he was of unsound mind, there is nothing in the evidence which tends, either directly or inferentially, to prove that his testamentary act was in the slightest degree influenced or affected by the condition of mind which prompted him to say and do things upon which the witnesses based their opinion."

If further support is needed for our conclusion that the showing made by the appellants entirely fails to establish testamentary incapacity, reference may be had to the following cases in each of which it was held that evidence much stronger than that here presented was insufficient as a matter of law to establish this fact: *Estate of Kendrick* (1900), 130 Cal. 360, 363 [62 P. 605] ; *Estate of Chevallier* (1911), 159 Cal. 161 [113 P. 130] ; *Estate of Purcell* (1912), 164 Cal. 300, 305 [128 P. 932] ; *Estate of Casarotti* (1920), 184 Cal. 73 [192 P. 1085] ; *Estate of Perkins* (1925), 195 Cal. 699 [235 P. 45] ; *Estate of Finkler* (1935), 3 Cal.2d 584 [46 P.2d 149] ; *Estate of Garvey* (1940), 38 Cal.App.2d 449 [101 P.2d 551] ; *Estate of Arnold, supra,* 16 Cal.2d 573, 582; *Estate of Powers, supra,* (1947) 81 Cal.App.2d 480.

With respect to the issue of undue influence little need be said. Assuming that the appellants' proof establishes that Martha Hilands had the opportunity and the motive of exercising undue influence upon the testatrix, this does not serve to establish that such influence was in fact exerted. ■ ''Mere proof of opportunity to influence a testator's mind, even when coupled with an interest or motive to do so, will not sustain a finding of undue influence, in the absence of testimony showing that there was pressure operating directly on the testamentary act.'' *(Estate of Kilborn* (1912), 162 Cal. 4, 11 [120 P. 762].) ■ Assuming further for the purpose of this discussion that proof that Martha Hilands handled the testatrix' business affairs established that a confidential relationship existed between herself and the testatrix, no presumption of undue influence arises therefrom in the absence of proof that Martha Hilands actually participated in procuring the execution of the will. *(Estate of Arnold, supra,* p. 581.) No such proof was adduced here.

■ While it is true, as appellants contend that upon a motion for summary judgment the affidavits of the moving party are to be strictly construed and those of the party opposing the motion are to be liberally construed *(Gibson* v. *De La Salle Institute* (1944), 66 Cal.App.2d 609, 618 [152 P.2d 774] ) it was incumbent upon the appellants to establish by factual affidavits that the charges made in their petition to revoke the probate of the will ''raised a real issue, something more than 'the product of adept pleading.' '' *(Schessler* v. *Keck* (1956), 138 Cal.App.2d 663, 668 [292 P.2d 314].)

■ Appellants, in order to defeat respondents' motion for a summary judgment, were required to present an affi-

davit or affidavits setting forth evidentiary facts sufficient, if accepted as true, to justify setting aside the probate of the will. Since the appellants' affidavits contain no facts showing the existence of a cause of action in appellants, and the affidavits in support of the motion state facts which, if proved, would support a judgment in favor of the moving parties, the judgment granting respondents' motion was proper. (*Maltby* v. *Shook* (1955), 131 Cal.App.2d 349, 355 [280 P.2d 541]; *Hardy* v. *Hardy* (1943), 23 Cal.2d 244, 248 [143 P.2d 701]; *Terrell* v. *Local Lodge 758, etc., Machinists* (1957), 150 Cal.App.2d 24, 28 [309 P.2d 130].)

The judgment is affirmed. The attempted appeals from the order denying appellants' motion to strike respondents' affidavits in support of the motion for summary judgment and from the order granting the motion for summary judgment are dismissed as said orders are not appealable.

Shinn, P. J., and Vallée, J., concurred.