Herschel F. TOMLINSON, Sr.,
Petitioner,

v.

Sally O. JONES, et al., Respondents.

No. C–2631.

Supreme Court of Texas.

June 20, 1984.

which all such bonds, respectively, were voted;
. . . .

Latham & Moss, James B. Ragan and B. Mills Latham, Corpus Christi, for petitioner.

Meredith & Donnell, Ted B. Roberts, Corpus Christi, for respondents.

RAY, Justice.

Herschel Tomlinson, Sr. brought this suit against Sally O. Jones to recover $39,700 in life insurance proceeds which Mr. Tomlinson, Sr. alleged were wrongfully paid to Ms. Jones after the death of Herschel "Tommy" Tomlinson, Jr. Tommy was the son of Herschel Tomlinson, Sr. and the husband of Sally O. Jones. After a jury trial, the trial judge granted Ms. Jones judgment notwithstanding the verdict. The court of appeals affirmed. 664 S.W.2d 123 (Tex.App.1983). The questions presented here are (1) whether there is evidence to support a jury finding that Tommy Tomlinson lacked sufficient mental capacity on January 18, 1975 to effectively change the beneficiary of his two life insurance policies from his father, Herschel Tomlinson, Sr., to his wife, Sally O. Jones, and (2) if there is, whether such jury finding matters under the facts of this case. We answer both questions affirmatively, reverse the judgments of the courts below, and render judgment for $39,700 in favor of Herschel Tomlinson, Sr.

Tommy Tomlinson and Sally Jones were married in 1962. Tommy was employed by Producers Grain Company in Amarillo, Texas and was covered by two life insurance policies issued in 1968 and 1969. The policies were provided by Producers Grain pursuant to the Producers Retirement Plan Trust, an express trust set up by Producers Grain for the benefit of its employees. Tommy named his father, Herschel Tomlinson, Sr., as beneficiary at the time the policies were originally issued, and Mr. Tomlinson, Sr. remained the beneficiary under the policies until approximately one week before Tommy's death in 1975.

Under the insurance contract between the Producers Retirement Plan Trust and the insuror, the trustees of the Trust were named the technical "owners" of Tommy's life insurance policies with the power to designate the beneficiary(s) of those policies. However, the trust agreement which created the Trust clearly gave Tommy the right to designate the beneficiary(s) of his policies; the trustees were authorized to name the beneficiary(s) only if for some reason Tommy failed to do so. Two provisions of the trust agreement make this quite clear:

Section 5.07—In the event of the death of a participant prior to normal retirement date, the Trustees shall instruct the life insurance company to pay to the beneficiary or beneficiaries *designated by the employee* in the policy or policies on his life or annuity, or, if none be so designated, to his estate, the death benefits provided by the terms of such policy or policies. (Emphasis added.)

Section 9.02—*If any participant shall fail to instruct the Trustees to designate a beneficiary or beneficiaries,* the Trustees shall designate as beneficiary or beneficiaries on his behalf, in the order named, these persons in the following classes who survive the participant: (1) spouse, (2) issue, per stirpes, (3) parents, (4) brothers and sisters, (5) nephews and nieces, and (6) estate of the participant. (Emphasis added.)

On December 15, 1974, Tommy Tomlinson was involved in an automobile accident and sustained second and third degree burns over fifty percent of his body. Because of this severe injury, he was taken immediately to the burn unit of Memorial Medical Center in Corpus Christi, Texas where he stayed until his death on January 25, 1975. On January 18, 1975, one week prior to Tommy's death, Sally Jones and two witnesses met with Tommy in the hospital, where Tommy was under 24-hour a day medical care. At that meeting, Tommy allegedly consented to the execution of a special power of attorney authorizing Sally to change the beneficiary of Tommy's life insurance policies from Tommy's father to Sally. Tommy did not actually sign this document himself (his hands were too badly burned to have permitted that in any case); Sally signed the document in his behalf. Nevertheless, Sally and the two witnesses present testified at trial that it was their belief that Tommy was alert, understood what was being contemplated, and affirmatively consented to the execution of the document in question.

Later on the day of the signing, Sally Jones notified the trustees of the Producers Retirement Plan Trust of the executed document and requested that the beneficiary change be made. The change was made, and after Tommy's death Sally received $39,700 in life insurance proceeds from the insuror.

Two years later, in May of 1977, Tommy's father, Herschel Tomlinson, Sr., brought this suit against Sally Jones. Mr. Tomlinson, Sr. alleged that Tommy had lacked sufficient mental capacity on January 18, 1975 to consent to the execution of the special power of attorney and therefore the beneficiary change was a nullity. At trial, the jury found that Tommy had indeed lacked sufficient mental capacity on January 18, 1975 to effectuate the change in beneficiary. The trial judge granted Ms. Jones a judgment notwithstanding the verdict, however, on the grounds that (1) there was no evidence to support the jury finding of no capacity and (2) such jury finding was irrelevant anyway because the insurance

contract between the Trust and the insuror gave the trustees the power to change the beneficiary on their own initiative. The court of appeals affirmed, holding there *was* sufficient evidence to support the jury finding of no capacity, but agreeing with the trial judge's reasoning that such finding was irrelevant.

 We must deal first with Ms. Jones' contention there was no evidence adduced at trial to support the jury finding of no capacity. In deciding a "no evidence" point, which is a question of law, we consider only that evidence and reasonable inferences to be drawn therefrom which, viewed in their most favorable light, support the jury finding, and we must reject all evidence and reasonable inferences to the contrary. *Glover v. Texas Gen. Indemnity Co.*, 619 S.W.2d 400 (Tex.1981). In reviewing the evidence under this standard, we find there is some evidence to support the jury's finding of no capacity. Tommy's medical records, which were properly admitted into evidence at trial, paint a grim picture of a man critically injured and in great pain, at times heavily drugged, at times hallucinating, with little possibility of survival. Indeed, the discharge summary prepared by Tommy's physician after Tommy's death stated that "in spite of all [the medical] measures [drugs, respirator, etc.], the patient continued his downhill course." We hold that this constitutes some evidence of "physical problems ... consistent with mental incapacity." *See Croucher v. Croucher*, 660 S.W.2d 55, 57 (Tex.1983).

 Having held there was some evidence to support the jury's finding of no capacity, we must decide the effect, if any, of that finding. As noted above, the court of appeals held the finding to be irrelevant. We disagree. While the insurance contract itself gave the trustees the right to change the designated beneficiaries on their own initiative, the trust agreement took away that right and gave it to Tommy. Therefore, it was critically important whether Tommy had sufficient mental capacity, at the moment the special power of attorney

was executed, to effect a change in beneficiary.

Given the jury finding of no capacity, it is clear that Mr. Tomlinson, Sr., was the rightful beneficiary of the two life insurance policies at the time of Tommy's death in 1975. But for the special power of attorney allegedly executed on behalf of Tommy on January 18, 1975—which power of attorney must be considered a nullity in light of the jury finding of no capacity—Mr. Tomlinson, Sr. would have received the insurance proceeds in dispute.

Accordingly, we reverse the judgments of the courts below and render judgment for $39,700 in favor of Herschel Tomlinson, Sr.