Vickie L. BERGEN, Plaintiff and Appellant,

v.

The TRAVELERS INSURANCE COMPANY OF ILLINOIS, an Illinois corporation, and Stephen Bergen, II, Defendants and Respondents.

No. 880147–CA.

Court of Appeals of Utah.

June 21, 1989.

---

Craig M. Peterson, E. Paul Wood and Thomas A. Mitchell, Salt Lake City, for plaintiff and appellant.

John S. Chindlund and Brian S. King, Salt Lake City, for defendants and respondents.

Before DAVIDSON, BENCH and BILLINGS, JJ.

BILLINGS, Judge:

The trial court granted summary judgment in favor of defendant Stephen Bergen, II ("Stephen Bergen"), son of the decedent and insured, awarding him 5/6 of his father's $150,000 life insurance policy. Plaintiff Vickie Bergen, the decedent's wife, appeals from the summary judgment claiming the decedent's purported change of beneficiaries was ineffective, and also that genuine issues of material fact exist regarding the decedent's competency at the time he purported to change the beneficiaries under the policy. We affirm in part, and reverse and remand for trial in part.

## FACTS

The following facts are gleaned from the numerous depositions and affidavits which were before the trial court. Decedent had a $150,000 life insurance policy ("the policy") issued by defendant Travelers Insurance Company of Illinois ("Travelers") which listed Vickie Bergen, the decedent's

fifth and present wife, and Stephen Bergen, the decedent's only child, as beneficiaries. Originally Vickie Bergen was to receive ⅚ of the proceeds, or $125,000, and Stephen Bergen was to receive ⅙, or $25,000, in the event of decedent's death. However, on February 26, 1986, the decedent delivered a letter ("the Bergen letter") to Robert L. Young, his insurance agent, stating he wished to change the amounts Stephen Bergen and Vickie Bergen were to receive under the policy. The Bergen letter, written on the decedent's personal stationery, read as follows:

2/26/86

Bob Young—

Effective immediately, please change beneficiary on my Traveler's [sic] Insurance policy as follows—# 7073129.

Stephen B. Bergen, II (5/6) $125,000.

Vickie L. Bergen (1/6) $25,000.

Vickie and I are getting a divorce. As soon as that is final, I will eliminate her portion entirely.

Call if questions—

Stephen B. Bergen

After receiving the Bergen letter from the decedent, Mr. Young contacted William Workman, the appointed general agent for Travelers in Salt Lake City. Mr. Young requested advice from Mr. Workman as to the standard procedure for processing a change of beneficiary request. Mr. Workman stated it was not necessary for the decedent to fill out any special form in order to change the beneficiaries on his policy. Rather, the decedent merely had to express his wishes in writing. The home office would then put his wishes in the correct format and send a copy to the decedent so that he could acknowledge that his wishes had been correctly implemented by Travelers.

Thus, Mr. Workman told Mr. Young to mail the Bergen letter to him and he would send the letter to Travelers' home office. After talking to Mr. Workman, Mr. Young made copies of the Bergen letter for his files and sent the original to Mr. Workman.

The decedent committed suicide on March 8, 1986. The following Monday, March 10, 1986, Mr. Young called Mr. Workman to inform him of the decedent's death and to inquire whether Mr. Workman had received the Bergen letter requesting a change of beneficiaries. Mr. Workman indicated he had received the Bergen letter and would immediately call the home office to ascertain a course of action on the request to change beneficiaries. Travelers' home office instructed Mr. Workman to have Mr. Young attest to and date the Bergen letter since Mr. Young had seen the decedent on the day of decedent's request, and then to send the request to the home office for processing. Mr. Workman hand-delivered the Bergen letter to Mr. Young for his signature. Mr. Young executed the attestation and the Bergen letter was sent to the home office. Travelers accepted the Bergen letter as effectively modifying the allocation of proceeds in decedent's policy.

On May 13, 1986, Vickie Bergen filed suit against Travelers and Stephen Bergen, seeking a declaratory judgment requiring Travelers to pay her ⅚ of the decedent's life insurance policy proceeds. Vickie Bergen claimed she was entitled to the proceeds because the procedure identified in the policy to change a beneficiary was not followed by the decedent, and in any event, the decedent was incompetent on the date the Bergen letter was executed.

On May 23, 1986, Travelers sought a declaratory judgment specifying the appropriate distribution of the policy proceeds as between Vickie Bergen and Stephen Bergen. That action was subsequently dismissed, and the policy proceeds were paid into court pending resolution of the initial action filed by Vickie Bergen.

The trial court granted Stephen Bergen's motion for summary judgment on March 23, 1987, holding as a matter of law the document executed by the decedent effectively changed the beneficiaries under the policy. The court resolved the remaining issue of competency on December 4, 1987, when it granted Stephen Bergen's motion for summary judgment, stating that as a matter of law, the decedent was competent on February 26, 1986, when he executed the Bergen letter changing the benefi-

ciaries on his life insurance policy. Vickie Bergen appeals both rulings.

## STANDARD OF REVIEW

Summary judgment should be granted under Utah R.Civ.P. 56(c) "only when it is clear from the undisputed facts that the opposing party cannot prevail." *Lach v. Deseret Bank,* 746 P.2d 802, 804 (Utah Ct.App.1987). When reviewing an appeal from summary judgment, we construe the facts and view the evidence in the light most favorable to the losing party. *Geneva Pipe Co. v. S & H Ins. Co.,* 714 P.2d 648, 649 (Utah 1986); *Lucky Seven Rodeo Corp. v. Clark,* 755 P.2d 750, 752 (Utah Ct.App.1988). "If ... we conclude that there is a dispute as to a genuine issue of material fact, we must reverse the grant of summary judgment and remand for trial on that issue." *Atlas Corp. v. Clovis Nat'l Bank,* 737 P.2d 225, 229 (Utah 1987). It is immaterial that the evidence on one side may appear to be strong or even compelling. *Lucky Seven,* 755 P.2d at 752. Moreover, "because a summary judgment is granted as a matter of law rather than fact, we are free to reappraise the trial court's legal conclusions." *Atlas,* 737 P.2d at 229; *Lucky Seven,* 755 P.2d at 752.

## FORMALITIES REQUIRED TO CHANGE BENEFICIARY

Vickie Bergen claims the decedent's attempt to change the respective distribution of proceeds to the beneficiaries under his policy was ineffective as he did not follow the procedure set forth in the policy.

■ The insured, if also the owner of the policy, has the right to change the beneficiaries in his insurance policy. *Culbertson v. Continental Assurance Co.,* 631 P.2d 906, 910 (Utah 1981). In making such a change, the insured does not need the consent of a previously designated beneficiary. *See* Utah Code Ann. § 31A–22–413(1)(b) (1986).

The terms of the policy generally dictate the procedure an insured must follow to effectively change the beneficiaries of his life insurance policy. *ITT Life Ins. Corp.*

*v. Damm,* 39 Colo.App. 285, 567 P.2d 809, 810 (1977). The controlling language in the decedent's policy provides:

*Requested Changes*—At any time after the first contract year, you may request changes. The request must be made:
1.  in writing
2.  to our office

.    .    .    .    .

*Beneficiary*—The original beneficiary is stated in the application. You may name a new beneficiary during the lifetime of the insured and while this contract continues. Any change will be effective from the date you signed the notice of change even if the insured is not living when we receive it.

■ It is our opinion the decedent clearly complied with the policy terms in designating his son as his major beneficiary. Before his death, the decedent delivered a letter signed by him to Robert Young, his insurance agent, clearly stating his intent that his policy should be modified in order that Stephen Bergen receive $125,000 and Vickie L. Bergen $25,000 of the policy proceeds. Young, after specifically asking Travelers as to the appropriate procedure and at its direction, forwarded the letter to Travelers' agent with the understanding that the Bergen letter would be forwarded to the home office. Thus, the notice of change of beneficiary was in writing, signed by the decedent, and sent to Travelers' home office. The fact that the home office did not receive the change of beneficiary until after the decedent's death is irrelevant under the policy terms. The policy specifically states the change will be effective even if it is received after the decedent's death, and does not require his signature be attested to.

Vickie Bergen claims the policy language refers to a form generated by Travelers and sent to the insured to confirm the policy change after Travelers has received a written notice of change from the insured. There is nothing in the policy language to support Vickie Bergen's claim that a special form is required before the change is effective. The "notice of change" language is not capitalized and by

its placement in the paragraph connotes a generic, not a specific, meaning.

█ Furthermore, even if we accepted Vickie Bergen's arguments, an insured must only substantially comply with the policy requirements for making a change of beneficiaries. "When the insured in attempting to change the beneficiary in his policy or certificate has substantially complied with the requirements for change by doing everything in his power to conform to prescribed conditions and formalities, but dies before completion thereof, the desired change of beneficiary will be deemed effective." 5 G. Couch, *Couch on Insurance 2d* § 28:66 (1984) (and cases cited therein).

In grappling with the acts necessary to satisfy substantial compliance, courts have stated "[a] change-of-beneficiary is effective when it is clear that the insured intends a change, has a right to make a change, and takes reasonable steps to bring about a change." *Bohannon v. Manhattan Life Ins. Co.*, 555 F.2d 1205, 1210 (5th Cir.1977). *See also Wentworth v. Equitable Life Assurance Soc'y*, 65 Utah 581, 238 P. 648, 650–53 (1925) (insured complied with all requirements to effectuate a change of beneficiary even though the change was not actually indorsed on the policy prior to insured's death); *IDS Life Ins. Co. v. Estate of Groshong*, 112 Idaho 847, 849, 852, 736 P.2d 1301, 1303, 1306 (1987) (decedent's failure to mail change of beneficiary forms to home office, as required under terms of retirement plan policy, did not preclude finding that decedent had substantially complied with contractual provisions for change of beneficiary); *Travelers Ins. Co. v. Smith*, 106 Ill.App.3d 318, 62 Ill.Dec. 216, 218, 435 N.E.2d 1188, 1190 (1982) (insured substantially complied with policy provisions for changing beneficiary even though insured's signature on form had not been witnessed by two persons).

█ A failure to comply with a requirement in a policy that the insured must indorse a change of beneficiary form once processed by the home office, will not overcome a finding that the insured has substantially complied with the policy provisions.

By the great weight of authority, a change of beneficiary under a policy containing the usual change-of-beneficiary clause relating to notice and indorsement can be accomplished without strict or complete compliance therewith on the theory that substantial compliance by the insured with the conditions respecting a change of beneficiary is sufficient. This conclusion is predicated upon the view that the indorsement by the insurer is merely an administrative act which it cannot refuse to perform. That is, if the consent of the insurer is not required, so that indorsement of change is a mere ministerial act, its neglect to make such indorsement is not available to the original beneficiary to nullify the designation of a new beneficiary.

5 G. Couch, *Couch on Insurance 2d* § 28:72. *See Tomlinson v. Jones*, 664 S.W.2d 123, 126 (Tex.Ct.App.1983), *rev'd on other grounds*, 677 S.W.2d 490 (Tex. 1984).

In the instant case, the undisputed facts before the court compel a conclusion that, at the very least, the decedent substantially complied with Travelers' requirements for changing beneficiaries on his life insurance policy. We therefore hold that based on the undisputed facts before the trial court, the decedent complied with Travelers' requirements for changing beneficiaries on his life insurance policy.

## COMPETENCY

Vickie Bergen further claims the trial court erred in holding, as a matter of law, the decedent was competent when he executed the letter changing the beneficiaries on his insurance policy. First, Vickie Bergen argues the trial court erred in applying a testamentary capacity standard to determine competency rather than a contractual capacity standard. Next, Vickie Bergen claims genuine issues of material fact exist as to whether the decedent was competent at the time he drafted the Bergen letter and thus, summary judgment was improper. We find there are material disputed

issues of fact as to decedent's competency, and thus reverse the summary judgment and remand for a trial solely on the competency issue.

If the decedent was incompetent at the time he drafted the Bergen letter, the purported change is ineffective and Vickie Bergen, as an original beneficiary may bring an action to avoid the change. 5 G. Couch, *Couch on Insurance 2d* § 28:100 (1984).

## Standard of Competency

■ We agree with the trial court that the proper standard for determining one's competency to change beneficiaries in a life insurance policy is a testamentary capacity standard. Designating beneficiaries on a life insurance policy, similar to executing a will, involves the individual making a unilateral choice as to who will receive the benefits of his estate.

> As to the degree of competency or the capacity requisite to change of beneficiary of an insurance policy, it is held that such act requires no more mental capacity [than] it does to make a will, the rule being that the insured must have had sufficient mind and understanding to comprehend the nature and effect of his act, and with such understanding, did voluntarily make the change.

5 G. Couch, *Couch on Insurance 2d* § 28:101 (1984). *See, e.g., Union Nat'l Bank of Wichita v. Mayberry*, 216 Kan. 757, 533 P.2d 1303, 1307 (1975) ("the universal rule is that the mental capacity necessary for a valid change of beneficiary by an insured is the same as that necessary to execute a valid will, deed or contract").

The Utah Supreme Court recently articulated the elements for determining testamentary capacity.

> The classic test of general testamentary capacity has three elements: to make a will, one must be able to (1) identify the natural objects of one's bounty and recognize one's relationship to them, (2) recall the nature and extent of one's property, and (3) dispose of one's property understandingly, according to a plan formed in one's mind.

*In re Estate of Kesler*, 702 P.2d 86, 88 (Utah 1985). We note that the standard for measuring the capacity to execute a will is somewhat less stringent than the capacity to contract or otherwise transact business generally.

> We remain cognizant of the fact that the law does not require that a person be particularly alert, nor need he have any special acumen in order to execute a will. He need not be able to operate a business or do other things which he might normally do in the prime of life.

*In re Estate of Richards*, 5 Utah 2d 106, 297 P.2d 542, 548 (1956). *See also In re Estate of Chongas*, 115 Utah 95, 202 P.2d 711, 713 (1949); *In re Estate of Goddard*, 164 Cal.App.2d 152, 330 P.2d 399, 403 (1958) ("the ability to transact business is not the legal standard of testamentary capacity").

■ In determining competency, a testator is presumed competent, and the person contesting a will has the burden to show by a preponderance of the evidence that the testator was incompetent to make the will. *In re Estate of Kesler*, 702 P.2d at 88; *In re Estate of Richards*, 297 P.2d at 545. We hold the same principles are applicable when examining whether an insured was competent at the time he executed a document changing the beneficiaries of an insurance policy.

## Propriety of Summary Judgment

■ Even though the trial court applied the correct standard for determining the decedent's competency, the trial court erred, in light of conflicting facts as to the decedent's competency, when it took a factual question from the jury and decided it instead on summary judgment. *In re Estate of Buttars*, 123 Utah 596, 261 P.2d 171, 172 (1953) ("it was a question of fact for the jury to decide whether a testatrix had a sound mind at the time she executed her will"). *See* 5 G. Couch, *Couch on Insurance 2d* § 28:102; *Succession of Ellis*, 486 So.2d 260, 262 (La.Ct.App.1986) ("We note from the outset that the question of testamentary capacity is a question of fact."); *In re Estate of Carey*, 504 P.2d

793, 798 (Wyo.1972) (testamentary capacity was an ultimate fact or issue for determination by the jury).

In the instant case, there was sworn evidence before the trial court that the decedent was a chronic alcoholic who had previously been in treatment but had recently resumed his problem drinking, was suicidal, exhibited unpredictable antisocial behavior, was unable to complete simple tasks, made bad investment decisions, and exhibited drastic mood swings, as well as other examples of inappropriate behavior at the time he changed the beneficiaries on his life insurance policy. Based upon the foregoing, we find there was sufficient evidence before the trial court to create a dispute of fact as to whether the decedent was competent at the time he executed the letter changing the beneficiaries under his policy.

In conclusion, we hold the decedent effectively changed the beneficiaries under his policy if he was competent at the time he requested the change. We further find the issue of decedent's competency at the time he executed the letter changing beneficiaries is in dispute, and as a question of fact, should be decided by the fact finder.

Based upon the foregoing, we affirm in part, and reverse and remand in part for a trial on the issue of competency.

DAVIDSON, J., concurs.

BENCH, Judge (Concurring):

I concur with the main opinion, except for the portion dealing with substantial compliance. That analysis is unnecessary in view of our conclusion that "the decedent clearly complied with the policy terms in designating his son as his major beneficiary."