## McFarlane *et al. v.* Robertson *et al.*

HOLDEN, J.  Upon the application of Stephens, an insurance policy was issued on his life, payable to his executors, administrators, and assigns, and placed in the hands of an agent of the insurer for delivery.  The insured intended the policy for the benefit of a relative, Mrs. Smisson, provided she would pay the premiums thereon.  She declined to do so, and the insured made known to his niece, Mrs. Robertson, that if she or her husband would pay the premiums on the policy, he would take the insurance and she should receive the proceeds of the policy.  On January 9, 1909, W. E. Hawkins, the general manager of the insurance company, wrote to the husband of Mrs. Robertson that the policy was not yet in force, but if he would sign notes left with the local agent, "payable to W. E. Hawkins," the insurance would go immediately into effect, and "After this we can have the beneficiary changed on the request of Mr. Stephens, making it payable to your wife, the niece of the insured.  We trust you will decide to give settlement for the policy and allow same to go into force.  We have sent assignment blanks to Mr. Ray, so that Mr. Stephens can assign the policy to your wife, affording temporary protection until the beneficiary can be changed."  On January 21, 1909, Stephens assigned the policy to Mrs. Robertson, whose husband signed and forwarded to the general manager the notes above referred to.  On that day Robertson also wrote the general manager that Ray stated that "you would have the policy rewritten in favor of my wife."  If this is "not true or not authorized by you, please return me the notes which I signed and mailed you this afternoon.  I can not afford to be carrying insurance made payable to some one else or his estate, when I wish it for the benefit of my wife and children."  On January 23, 1909, the general manager wrote Robertson, "In reply I beg to say with the assignment blanks we have in our possession puts this policy in full force and in the event of the death of Mr. Stephens it will be payable to your wife," that it would be "some two weeks" before the policy could be rewritten, and "In the meantime you can feel fully protected under the assignments what we have on hand."  On February 5, 1909, the general manager sent Robertson a writing for Stephens to sign, requesting that the policy be rewritten payable to Mrs. Robertson.  Stephens refused to sign the request.  The policy was rewritten payable to Mrs. Robertson, but was never delivered, because of the refusal of Stephens to sign the request.  Robertson declined to pay the notes, but paid them after the death of Stephens and on the same day he died.  Hawkins was to pay the premiums to the insurer and retain the notes as his individual property.  Soon after the notes were given, and some time prior to the death of the insured, Hawkins paid the premiums to the company, and sent its receipt therefor to Robertson.  The insurer paid the money into court, and in a contest between the administrator of Stephens and Mrs. Robertson, the jury found a verdict in favor of the latter.  To the order of the court overruling their motion for a new trial, the administrator and the children of Stephens, who were also parties to the case, excepted.  *Held:*

1. The fact that Stephens did not sign a request that the policy be rewritten so that Mrs. Robertson should become the payee thereof, and the

fact that the policy was not delivered after being rewritten, did not make the assignment of the policy by Stephens to Mrs. Robertson invalid, and the evidence did not warrant a charge wherein the jury were authorized to find that the assignment was invalid on the ground that it was not to be a binding and valid assignment unless the policy was rewritten and was not a completed and final assignment.

2. Under the evidence, Robertson was liable to Hawkins on his notes for the premiums paid by Hawkins to the company, though the rewritten policy was not delivered because of the refusal of Stephens to sign the written request that this be done, and the assignment could not be said to be invalid because of the refusal of Robertson, prior to the death of the insured, to pay these notes; and the charges of the court inconsistent with the ruling above made were error.

3. The charges referred to in the preceding headnotes were erroneous, but they were not such errors as were harmful to the plaintiffs in error.

4. One of the charges of the court to which exception is taken is as follows: "The theory of the law as to wagering contracts is this: At best, payment of an insurance premium in consideration of a guarantee of the payment of a certain fund upon the death of the person insured is, at least, practically a contract whereby the insurer, the company, takes the chances of the person insured not dying either within, if it be a limited contract policy, the limit of time, or, if it be a life policy or any other character of policy, it is a contract by which the company takes the chances of the premiums paid being worth as much or more than the amount to be paid upon the death of the insured. And on the other hand, the payment of premiums constitutes a contract in which the assured agrees to pay a certain amount of premium under the terms of the contract, on the theory when either his life terminates the policy becomes due, or for the years for which it is taken is passed the policy matures; so that you will see, as between the two parties the insurer and assured, they stand in the attitude towards each other of one agreeing to pay money in consideration of insurance, and the other agreeing to pay the insurance in the event of death. Now, the law says to take out insurance you must have an insurable interest." Immediately after this charge the court charged the jury as follows: "A creditor has an insurable interest in the life of another to the extent of his debt and premiums and interest necessary to maintain it in force. A husband has it in the wife, and the wife in the husband, and a child in the father," and immediately thereafter delivered the charge quoted in the succeeding headnote. *Held*, that the charge first above quoted, in connection with its context, did not accurately define a wagering contract as applicable to the law of insurance.

5. The court charged the jury as follows: "Uncle and niece occupy no such relations towards each other as that by the very fact of that relationship an insurable interest exists; but I charge you that the absolute relationship by blood of two parties is not the sole test of an insurable interest between them, but an insurable interest which takes a contract out of the class of wagering contract may arise from such an interest or relationship as will convince the jury that the party claiming the insurable interest in the life of another has, because of natural affection and relationship between the two parties, a desire to

protect the life of that other; and while it is true that the rule of law that a niece has no insurable interest in the life of her uncle because of that fact of relationship alone, yet, if you believe from the evidence that in addition to being the niece of the insured, Stephens, that defendant, Mrs. Robertson, had showed Stephens such natural affection as would tend naturally to create a desire on her part to prolong, promote, and protect the life of Stephens, then I charge you that Mrs. Robertson had an insurable interest in the life of Stephens." This charge was error, as it did not correctly set forth what constituted an insurable interest on the part of Mrs. Robertson in the life of Stephens. The charge made the insurable interest consist in the existence of the fact that Mrs. Robertson had showed Stephens such natural affection as would tend naturally to create a desire on her part to prolong, promote, and protect his life, instead of making an insurable interest depend upon the existence of such facts as would create a reasonable expectation on the part of Mrs. Robertson of benefit or advantage to her from the continuance of the life of Stephens and of loss by reason of his death.  1 Cooley's Briefs on Ins. 278-284, 290; 4 Words & Ph. 3672, 3673.

6. There was no error in the charge upon the subject of agency; nor was there any error in the refusals to give the charges requested by the plaintiff in error.

*Judgment reversed. All the Justices concur, except Beck, J., absent.*
    OCTOBER 28, 1911.  REHEARING DENIED NOVEMBER 16, 1911.

Equitable petition.  Before Judge Felton.  Bibb superior court. January 30, 1911.

*Lane & Park,* for plaintiffs in error.
*Hall & Hall* and *L. D. Moore,* contra.