19284.   MANDEVILLE MILLS *et al.* v. MILAM.

DECIDED MAY 20, 1929.

*Bryan & Middlebrooks, R. D. Jackson, S. D. Boykin, Boykin & Boykin,* for plaintiffs in error.

*Smith & Millican, Smith & Taylor, Willis Smith,* contra.

BELL, J.  Mrs. Jennie Lou Milam, as beneficiary, brought suit against Ætna Life Insurance Company and Mandeville Mills, a corporation, upon a policy of insurance issued upon the life of her husband on what is known as the "group-policy plan," under which separate certificates were issued to the various persons whose lives were insured by the policy.  The certificate to the plaintiff's husband was issued on August 1, 1927, while he was in the service of the Mandeville Mills, and was in the sum of $1,000.  The case was tried in the court below upon an agreed statement of facts, and resulted in a judgment in favor of the plaintiff against Mandeville Mills for $982.70, this being the full amount sued for, less certain deductions assented to by the plaintiff.  The defendants then, by direct bill of exceptions, brought the case to this court, and the sole question for determination is whether the defendant employer, through whom the insurance was payable, had the right to deduct the amount of a certain note due to it by the insured, before settling with the beneficiary.  The master contract or policy was made between the employer and the insurance company, and the certificate in suit, issued and signed by the employer upon the basis thereof, recited that "under and subject to the terms and conditions of said policy, and the application therefor, the life of H. J. Milam, an employee, is insured for the sum of one thousand dollars," and named the plaintiff, his wife, as the beneficiary.  The certificate further provided that the insurance might be terminated whenever the employee for any reason ceased to be "in the employ of said employer."  The main policy was issued upon an application signed by the employer, which stated that the proceeds should be payable to the employer, but that "said employer, after reimbursing itself for any cash advances made by said employer to and for the insured as shown by its books or records, or for any promissory notes of the insured in favor of the employer, or for any bills paid by said employer either before or after the death of the insured for medical attention to the insured and funeral and burial expenses, shall pay the balance, if any, to the beneficiary or beneficiaries especially designated by the insured, approved by the employer, and filed at the home office of the company.  . .

Payment by the company to the employer shall be in full satisfaction of every obligation of said company." The policy was intended only for employees, and was payable "as requested in the application," which was expressly made a part of the contract. The premiums were paid by the employer, but deducted from the wages of the employees.

The insurance company pleaded that it had paid the face amount of the policy to the employer, in satisfaction of its liability. The defendant employer set up that at the time of the insured's death he was indebted to it in the sum of $365.31 principal and $274.66 interest, upon a promissory note executed by him in 1920, and also for certain other items, amounting to $17.30 (about which there is no controversy), and that this defendant was entitled to retain the aggregate of such indebtedness, to wit $657.27, out of the proceeds of the policy, after deducting which there would remain a balance of $343.40 due to the plaintiff beneficiary, which balance the defendant tendered into court with its answer. One of the facts admitted in the agreed statement was that the note referred to in the answer of Mandeville Mills, the employer, "was for fertilizer purchased from the Mandeville Mills prior to the time he was employed by the said Mandeville Mills, and before the issuance of the policy." It was contended on the part of the plaintiff that this note was not "deductible," and this was the only issue upon the trial.

We think the court properly rendered judgment in favor of the plaintiff for the entire amount of the policy, less the $17.30 mentioned above, about which there was no controversy. The question presented is not without difficulty, and the fair and able counsel for the respective parties have very frankly declared their inability to cite any case bearing directly upon the point, although counsel for the plaintiff in error offer certain cases as supporting, by analogy at least, their contention that the defendant employer was entitled to retain the amount of the note before settling with the beneficiary. Among these cases are such as *Exchange Bank of Macon* v. *Loh,* 104 *Ga.* 446 (31 S. E. 459, 44 L. R. A. 372), in which it was held that a creditor may insure the life of his debtor for the purpose of securing the payment of the indebtedness, and *Washington Exchange Bank* v. *Smith,* 149 *Ga.* 650 (101 S. E. 769), in which it was ruled, in effect, that the provision in a note

that any excess of security upon such note shall be applicable to any other note or claim held by the payee against the maker, gave to the payee the right to apply to another note, previously executed between the parties, any excess of the security pledged or conveyed to secure the note containing such stipulation.

In our opinion none of such cases go sufficiently to the question now under consideration to be satisfying, even if they are to some extent persuasive. It seems that aid to a proper determination of the question in hand can be had only from the settled rules of construction which are applicable generally in the interpretation of contracts. The cardinal rule of construction, to which all others are subordinate, is to ascertain the intention of the parties, and in order to do this the language of the agreement should be considered in the light of the attendant and surrounding circumstances. The court should place itself as nearly as possible in the situation of the parties, in seeking the true meaning and the correct application of the language of the contract. Civil Code (1910), §§ 4266, 4268(1); *Bridges* v. *Home Guano Co.*, 33 *Ga. App.* 305, 309 (125 S. E. 872); 13 C. J. 542).

If a policy or contract of insurance is fairly susceptible of more than one construction, the interpretation most favorable to the insured will be given effect. *Columbia Casualty Co.* v. *Rogers*, 157 *Ga.* 158 (121 S. E. 224); *Penn Mutual Life Ins. Co.* v. *Milton*, 160 *Ga.* 168 (127 S. E. 140, 40 A. L. R. 1382). As to a group policy this rule should enure to the benefit of the several individuals for whose protection the policy was issued, and not to the advantage of the nominal party,—as in this case the employer, to whom the policy is made payable, since the several holders of the certificates issued upon the basis of the main contract are the parties chiefly interested. While, as stated above, the principal contract was between the company and Mandeville Mills, the protection was intended mainly for the employees, and any uncertainties or ambiguities in the contract having reference to the respective rights of the employer and employee should be construed favorably to the latter. One of the reasons for this view is that the contract was apparently the result of negotiations between the insurance company and the employer, without consultation with the employees as to the language to be used; and in such circumstances, if words of uncertain meaning have been adopted, it is only fair that even as

between the employer and the employee the doubt should be resolved against the former as one of the authors of the instrument. *Candler Investment Co.* v. *Cox,* 4 *Ga. App.* 763 (62 ·S. E. 479) ; *Ætna Insurance Co.* v. *Lipsitz,* 130 *Ga.* 170 (2) (60 S. E. 531, 14 Ann. Cas. 1070) ; *Moorefield* v. *Fidelity Mutual Life Ins. Co.,* 135 *Ga.* 186 (2) (69 S. E. 119) ; 13 C. J. 542.

Another important factor to be considered is the object and purpose of the agreement. We think it evident that a group policy of insurance obtained by an employer for employees is intended for the protection of the employees as a class, especially where the policy provides that only the employees shall be eligible to obtain certificates thereunder, and are persuaded that it was not the purpose of the instant policy to provide a means whereby the employer might collect from the employee an indebtedness which existed previously to the assumption of such relation between them. Such a construction of the policy would tend to make of it an instrument whereby the employer would be enabled to collect pre-existing insolvent debts, whereas the employee was doubtless moved to enter the compact out of a desire to make provision for his family or dependents, in case of death, and this fact must have been known to the employer.

The construction contended for by the employer in this case would seem to be subversive of the controlling purpose which the parties had in mind at the time the insurance was issued. If the note which the defendant held against Milam had amounted to as much as the face of the certificate, the insurance would have been entirely for the protection of the employer, as between that party and the beneficiary, and in that case the plaintiff could have been classed as a beneficiary in name only; whereas the employee undoubtedly was intending to procure insurance for the plaintiff's benefit, irrespective of any indebtedness which existed against him and in favor of the defendant, at the time of his employment.

The language preceding as well as that which immediately follows the provision relied on plainly has reference to indebtedness connected with or incident to the employment, and the particular descriptions, as "cash advances made by said employer . . as shown by its books of records," and as "any bills paid by said employer . . for medical attention to the insured and funeral and burial expenses," should have some weight in ascertaining the

meaning of the more general terms which are used in the same connection. *Fleming* v. *City of Rome,* 130 *Ga.* 383, 387 (61 S. E. 5).

The note in question was not a note in favor of the maker's "employer" at the time it was executed, but the payee became his employer afterwards. We think it was not the intention of the policy to protect a note which not only was executed prior to the employment but was based upon a consideration entirely foreign thereto.

In this view it is unnecessary to decide whether under the provisions of the particular policy the defendant could have deducted the amount of the note if the policy had been payable to the insured's estate and not to another person as beneficiary. See, in this connection, *Jefferson Standard Life Ins. Co.* v. *Rankin,* 39 *Ga. App.* 373 (147 S. E. 157).

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*