26907, 26929. BRYANT v. CONTINENTAL CASUALTY COMPANY; and *vice versa.*

Decided October 24, 1938.

520

*Hamilton Lokey, Carlton Mobley, W. L. Bryan,* for plaintiff.
*Bryan, Middlebrooks & Carter, John A. Dunaway,* for defendant.

SUTTON, J. Counsel for the plaintiff cite several New York

cases in support of their contention that the agent of an insurance company is entitled to commissions on renewal premiums paid after the termination of his employment. The New York rule, however, seems to be in the minority. The eminent Mr. Williston in his 1936 edition of his work on Contracts states in volume IV, page 2874, § 1030: "The weight of authority sustains the view that the commissions upon renewal premiums are not simply payment for securing the insurance but compensation for other services in the prosecution and preservation of the company's business; and, accordingly, if the agent is discharged for cause, or leaves voluntarily, the company is under no further liability in respect to the renewal premiums." In the annotations following Masden v. Travelers Ins. Co., 79 A. L. R. 469, the editors collect on page 478 authorities from many States under the statement of the general rule that unless the contract expressly provides for commissions on renewal premiums paid after the termination of employment, the agent is not entitled to such commissions. In Lochner v. New York Life Ins. Co., 200 Mo. App. 659 (208 S. W. 862), the contract expressly provided that after the termination of employment the agent would not be entitled to commissions on renewal premiums paid after the agency ceased. Many authorities were thoroughly considered in the opinion, and it was stated: "So that the decided weight of authority leads to the conclusion that, unless it is expressly stipulated or clearly to be gathered by the contract [that] the agent's right to commissions on renewals is to continue on renewals falling in after the term of his employment, he is not entitled to commissions received or falling in after the expiration of his agency. The right of the agent to commissions on renewals collected or falling in after the end of his agency can rest only on express terms in his contract, or be necessarily drawn from an interpretation of that contract as a whole. This must be so, for the right to commissions on renewals rests, in part, on the consideration of the services by the agent to the company in keeping the policies written by him alive." In 14 R. C. L. 869, § 42, it is said: "The most important question which arises with reference to the compensation of insurance agents is whether an agent entitled to commissions on renewal premiums is entitled to a commission on such a premium paid after the termination of his agency. Of course, where his contract of employ-

ment provides that he shall receive a certain commission on renewal premiums so long as he continues to be the agent of the company, he is not entitled to commissions on renewals made after his discharge. . . The right to commissions on renewal premiums terminates at his death, discharge for cause, resignation, especially where the contract discloses an intent that the right to commissions shall not extend beyond that time." Mr. Couch in his Cyclopedia of Insurance Law (1929 ed.), vol. 3, § 560d, states: "And, if either party may terminate the contract at pleasure, no right exists to commissions not collected before the termination of the employment, although it be done by the company, where it also appears that commissions were to be on premiums collected. . . Nor has an insurance agent any right to commissions accruing after he voluntarily, and without cause, terminates or abandons his employment or contract." Even in Hercules Mutual Life Assurance Society v. Brinker, 77 N. Y. 435, cited by counsel for the plaintiff as a leading New York case, where the plaintiff was a general agent and collections were not to be made monthly, but annually, the majority opinion of the court was concurred in by only four judges, one of three dissenting judges writing a very strong dissenting opinion.

It does not appear that the question sub judice has heretofore been presented to the appellate courts of this State. Counsel for the defendant cite *Park* v. *Piedmont & Arlington Life Ins. Co.*, 48 *Ga.* 601, as authority for their contention that the agent is not entitled to commissions in the present case. We do not think, however, that the point here under investigation was there decided. In that case the agents were employed to collect the premiums; and it was provided in the contract that the compensation for their services was to be twenty per cent. of all sums collected for first year's premium insurance, and seven and one half per cent. of all sums *received by them* for continued renewals of policies. The agents were discharged. The decision of the court that the agents were not entitled to commissions on renewal premiums paid after the termination of the agency was bottomed on the provision that the premiums must be *received by them;* and inasmuch as renewal premiums were not received by them, but by the company after the termination of the agency, the plaintiffs were not entitled to commissions thereon. Irrespective of what may be said to be the gen-

eral rule, we think that the present case must be governed by the express provisions of the contract properly construed as a whole. It is apparently conceded by both parties that the provision of the contract as to terms of payment for business produced by the agent was typewritten. Counsel for the plaintiff contend, that, the contract being silent as to whether or not the agent would be entitled to commissions on renewal premiums paid after the termination of employment, an ambiguity exists; and that as the provision as to compensation was in writing and the other portions of the contract printed, the written portion should prevail, and that the uncertainty should be resolved in favor of the plaintiff. Undoubtedly, where an ambiguity exists, the written portion of a contract is entitled to more weight, but in the present contract we find no ambiguity. While it does not expressly state what would be the right of the plaintiff as to commissions on renewal premiums paid to the company after the voluntary termination of his employment by the agent, neither the written portion nor any other part of the contract militates against what we believe to be the true and proper construction of the contract, viz., that for the agent to claim commissions on the renewal premiums they must have been paid during the time the agent was engaged in serving the company.

What does the contract disclose that the agent must do to obtain "15 per cent. on all renewals of the business that said agent may write, provided said business renews within 30 days from the time it is due"? If there were no other provision, it might be gathered from such written portion that as long as renewal premiums were paid to the company the agent would be entitled to 15 per cent. thereon, if paid within thirty days from the time the premium was due, whether or not he be in the service of the company at the time. But under the other provisions of the contract, which must be construed in connection with the written portion to ascertain the real intent of the parties, can it reasonably be said that the company could claim no right to the agent's services as to such renewal premiums or to policyholders who did not continue to pay their premiums but became delinquent? If an agent write, say, twenty-five policies, fifteen of which are kept alive by monthly renewals, can the agent forget the interest of the company as to the other ten, make no effort to collect renewal premiums from them, sever his connection with the company without giving the

notice required by the contract, and then justly contend that he is entitled to commissions on renewals with which he had nothing to do? It is provided in the contract that he is to devote his entire time to the development of the business in the territory specified, and that "the full and complete compensation of the agent for all business secured as aforesaid, and for all services performed or required of the agent under this contract or the instruction herein mentioned, shall consist of" the named commissions. Stated inversely, it is provided that the compensation is to be paid to the agent in consideration of his devoting his entire time to the development of the business in the territory of Atlanta and vicinity, and for the business procured by him, and for all services performed or required of him. What services? The contract answers the question. He must procure and transmit applications for accident and health insurance on the disability plan (admittedly involving monthly renewals, requiring close attention). He must deliver the policies to the insured. He must collect and pay over to the company the premiums on the insurance so effected. He must also perform such other duties as may be required by the company. It is specified that all such services must be rendered in accordance with the company's manuals or rate-books and such specific instructions as the company may give from time to time. In what manner the manuals or rate-books prescribe that such services are to be performed is not shown, but enough is said to show an obligation on the part of the agent to render services beyond the mere procurement of the policy, and that to earn the stated commissions he must abide and be subject to "such specific instructions" as the company may give from time to time. The compensation is not divisible as to the things to be done. It is conditioned on the performance of all the services required of the agent. His voluntary withdrawal necessarily involved an abandonment of all those duties.

It is contended by the plaintiff that to hold that the agent is not entitled to the commissions for which he sues would be to put too harsh a construction on the contract. However, its terms are plain and unambiguous. The agent was willing to enter into it, and was not misled by the company as to its terms. Conceivably, to write a large volume of business and, after resigning employment, yet be unable to realize on commissions on renewal premiums paid after

his withdrawal might, as contended, work a hardship on the agent. But where there is no ambiguity in the contract, this court can not undertake to place on it a construction which would relieve the harshness, although equity will sometimes refuse to enforce an unconscionable contract. To hold that the plaintiff in the present case became entitled to commissions on renewal premiums paid after the termination of his employment would be to announce that he obtained a vested right in such commissions; that he might at any time sever his connection with his employer, without giving the required ten-days notice, enter the employment of a competitive company, harass his former employer by creating dissatisfaction among its policyholders or causing them to transfer their business to him. Rights do not vest absolutely when conditions like those in the present contract are imposed. The right to future commissions on renewal premiums was manifestly conditioned on the performance of services specified in the contract, services which could not be enjoyed or commanded by the company after the agent had withdrawn. We think that the agent was not entitled to any commissions on renewal premiums which were not paid to the company during the time he was engaged in serving it. Nor did the amendment of February 3, 1938, show anything that amounted, as claimed by counsel for the plaintiff, to a complete departure from the contract in respect to the obligation of the agent to collect the renewal premiums. It was alleged that in each instance where a new policy was issued as a result of the solicitation by the agent, the policyholder was instructed by letter, and the agent was instructed to so inform the policyholder, that all of the premiums should be paid directly to the company, and that the agent had nothing to do with the adjustment of claims; that when the agent had obtained the issuance of and had delivered a policy he was through with that particular contract, and was under no obligation to do anything else in connection with it; that he did not handle the collection of renewal premiums, but the general agent, by himself or through his office, handled these matters; that this was the usual method of operation during the entire period of the plaintiff's employment; that when he made a collection of a renewal premium he did so merely as a matter of accommodation; and that he was under no responsibility of servicing the policies in respect to adjustment of losses arising thereunder. It was not

alleged, however, that in writing the policyholders to pay renewal premiums directly to the company the defendant had agreed with the plaintiff to relieve him in all events of the duty of collecting. It is contended that this practice amounted to a waiver. We do not think so. Furthermore, waiver must be specially pleaded. "A waiver is the voluntary relinquishment of some known right, benefit, or advantage which the party would otherwise have enjoyed. Waiver is essentially a matter of intent based upon full knowledge of all the material facts, and the evidence relied upon to prove a waiver must be so clearly indicative of an intent to relinquish a then known particular right or benefit as to exclude any other reasonable explanation." *Plumer* v. *Continental Casualty Co.*, 12 *Ga. App.* 594 (2) (77 S. E. 917).

Nothing that the defendant is alleged to have done is inconsistent with an intention to call on the plaintiff to collect renewal premiums whenever the policyholder should become delinquent. The allegations are not so clearly indicative of an intent to relinquish that right as to exclude any other reasonable explanation. A very reasonable explanation would be that where policyholders paid directly to the office, the agent would be afforded more time in which to solicit new business, and thereby the interest of the company and himself would be mutually served. The letter from the general agent, while stating that the agent had nothing to do with claims, did not state that he did not have anything to do with collecting. As long as premiums were paid to the office there was no need for pressing the agent into collection service; but if some other method than a collection letter from the office became necessary to keep the business on the books, the company was at liberty, under the contract, to call on the agent to collect. Aside from such duty of the agent, he was under an obligation to continue to seek new business and perform other duties that might be required of him in accordance with the company's manuals and rate-books and "such specific instructions" as the company might give from time to time. The allegations fail to show an intention on the part of the company not to claim that the agent was not entitled to commissions on renewal premiums in the event he left the service of the company before such premiums were paid. The allegation that when he caused to be issued and delivered the policy he was through with that particular contract and under no obligation

to do anything else in connection with it is nothing more than a bare conclusion of the pleader, unsupported by allegations of facts, and it is contrary to the plain provisions of the written contract. The same applies to the allegation that when he made a collection of a renewal premium he did so merely as a matter of accommodation.

The evidence did not make any stronger case for the plaintiff than did the petition. It was shown that the plaintiff was not making any claim for commissions on renewal premiums paid during the term of his employment; that he sought applications and delivered policies; that while he testified on direct examination that he was under no obligation, after delivering a policy, to do anything else in connection with it and did not handle the collection of renewal premiums, he admitted on cross-examination that when policyholders were in arrears, records would from time to time be referred to him for attention; that if the renewal premium was paid at the office, more time was afforded him for contacting new business, but that when a policyholder "didn't come in and pay around the 10th or 15th of the month, they would give me a list of delinquents and ask me wouldn't I call them up, or, if I happened to be passing that way, drop by and ask them about the insurance, had they forgotten it or overlooked it." Numerous lists were introduced in evidence, showing where he was receipted for collections made by him, notwithstanding the letter from the company that premiums should be paid direct to the office. It was also shown that it sometimes became necessary for him to look up a policyholder several times a year, with respect to premiums due, so as to keep him on the books; that the type of insurance was monthly-renewal disability insurance, requiring the constant attention of the agent or the office and agent together. It was not shown that there was any agreement between the company and the agent whereby the provision of the contract as to the duty of the agent to collect had been abrogated. It clearly appears from the evidence that the agent was expected to serve the company beyond the mere procurement of the policy, and that under the written contract introduced in evidence his compensation was conditioned on the full service specified. Abandoning those services, he was not entitled to commissions on the renewal premiums which were paid to the company after his voluntary withdrawal. Under the peti-

tion and the evidence the plaintiff was not entitled to recover, and the court did not err in dismissing the case on motion. Because of the result we have reached above, it is unnecessary to pass on the assignments of error in the cross-bill of exceptions.

*Judgment affirmed on the main bill of exceptions. Cross-bill dismissed. Stephens, P. J., and Felton, J., concur.*