AMERICAN CASUALTY COMPANY, Appellant,

v.

TEN TEX CORPORATION, Appellee.

TEN TEX CORPORATION, Appellant,

v.

AMERICAN CASUALTY COMPANY, Appellee.

No. 22389.

United States Court of Appeals Fifth Circuit.

March 11, 1966.

H. A. Stephens, Jr., Atlanta, Ga., Smith, Ringel, Martin & Lowe, Atlanta, Ga., of counsel, for appellant.

James W. Dorsey, Gerald A. Friedlander, Atlanta, Ga., Nall, Miller, Cadenhead & Dennis, Atlanta, Ga., for appellee.

Before BROWN and COLEMAN, Circuit Judges, and GARZA, District Judge.

COLEMAN, Circuit Judge.

A jury in the district court found that manufacturing stock, materials, and supplies, the property of appellee, were covered in a certain policy of insurance. The trial court held as a matter of law that the owner was not entitled to collect penalty and attorney's fees for an alleged bad faith refusal to pay the insurance claim. The insurance company has appealed the jury verdict and the owner cross appeals as to penalty and interest. We affirm as to both.

In 1961, appellee and cross-appellant, Ten Tex Corporation, was operating a plant for the manufacture of textile tuft-

ing machines in the little town of Chatsworth, Georgia. There were simultaneous operations in two buildings. One, designated for purposes of identification at the trial as Building A, was of brick veneer construction and sprinklered. The other, so designated as Building B, was a frame building, with wood joists and metal siding, not sprinklered. The two buildings faced North Second Avenue, on land belonging to Ten Tex, were 131½ feet apart, and were connected by a concrete sidewalk, twenty feet wide, belonging to the town. Heavy angle iron was received in Building B, there dimensioned, and then sent up the concrete walkway on a hand truck to Building A, where the remainder of the manufacturing process was completed, other than painting, finishing, crating, and shipping which was accomplished from Building B. Building A also contained office space for the operation.

There were no street addresses in Chatsworth and no street number was ever assigned to or used on either of these buildings. The general public did not use street addresses and none were used for postal purposes.

On August 14, 1961, the American Casualty Company, appellant and cross appellee, which we shall hereafter refer to as the insurer, issued the appellee-cross appellant, hereafter referred to as the manufacturer, a Monthly Reporting form policy of insurance. This policy covered the following property: "Stock, Materials and Supplies consisting principally of Stock usual or incidental to the manufacture of Textile machines, including machines in process, including packages for or containing the same, usual or incidental to the business of the insured".

Although street numbers were not used by the general public or postal authorities in Chatsworth, the policy stated the location of the premises as being "200-02 W/S of N. 2nd Ave."

The policy further stated: "When any location is a manufacturing, processing or finishing plant the limit of liability *shall apply over the area within all structures*, in cars or vehicles and in the open at the plant site, and outside thereof if within 100 feet of any structure thereon, unless a specific limit of liability is provided at one or more designated structures at such a location, in which event the limit of liability over the remainder of such a location shall be that provided for 'at any other location acquired'." (emphasis added).

In promulgating rates for this area, the Georgia Rating Bureau listed Building A as being located at 200-202 North Second Avenue, but Building B was listed as Number 216 of the same Avenue. The Bureau Inspector testified that the Bureau followed "the Sandman Map" system, but Chatsworth has never been mapped by the Sandman Organization. There was no proof that the manufacturer knew of this system, although the jury would have been free to infer it from proof that on one occasion the manufacturer's representative did sign an insurance schedule for buildings and contents in which the two buildings were identified by street numbers as per the Rating Bureau method.

In any event, the use of these street numbers by the Rating Bureau, when they were not used in Chatsworth, engendered this law suit.

On October 9, 1961, Building B burned to the ground, destroying all contained therein. The insurer denied liability on the ground that the building was not covered by the policy. Consequently, Ten Tex filed suit against American Casualty in a Georgia State Court for recovery of $25,471.16, the alleged loss. The manufacturer also sought the statutory penalty of 25% of the amount sued for, plus reasonable attorney's fees alleging bad faith on the part of the insurer, such as would allow it to recover penalty and attorney's fees under provisions of Section 56-1206 of the Georgia Code.[1]

The case was removed to the United States District Court. Trial to a jury

---

1. "56-1206. Liability of insurer for damages and attorney's fees.—In the event of a loss which is covered by a policy of

insurance and the refusal of the insurer to pay the same within 60 days after a demand has been made by the holder of

resulted in a verdict for Ten Tex in the full amount sued for as proceeds under the insurance policy. The trial court declined to submit the issue of attorney's fees and penalties to the jury, finding the evidence insufficient to establish that degree of bad faith required to sustain the application of the statute in this regard.

Counsel stated to the trial court that there is no decision of the appellate courts in Georgia dealing with a case of this kind. The district court proceeded to try the question of disputed coverage on oral proof, documents, and depositions. The circumstances herein described were presented to the jury under instructions from the trial judge which are not here made the subject of complaint. The result was the jury verdict already described.

The insurer also contended that certain tools, drills, jigs, fixtures, and dies were not included within the meaning of policy provisions referring to stock, materials, and supplies. This issue was specially submitted to the jury, which answered in the affirmative, fixing the value of the disputed items.

■ While the insurer vigorously attacks the verdict against it, we must affirm, Hanover Fire Insurance Co. of New York v. Argo, 5 Cir., 1957, 251 F.2d 80; American Fidelity and Casualty Company v. Drexler, 5 Cir., 1955, 220 F.2d 930.

■ We perceive no error in the action of the trial court in dismissing the claim for penalty and attorney's fees.

Evidence of an undisputed character presented adequate grounds for a good faith denial of coverage. In addition to what has already been said, the manufacturer held other, separate building and contents insurance policies on the two buildings in which the addresses were shown, respectively, as "200–02" and "216". The insurance collected on other policies for Building B and contents was pursuant to "216" address. The rate on Building B was about three times that on Building A. In writing the Monthly Reporting Form policy either Building B was not, in fact, covered, or someone made a mistake in calculating the premium at the much lower Building A rate. A representative of the manufacturer had signed an insurance schedule of other policies in which the two addresses were used. Indeed, it was stated at the Bar of this Court that this case had once been tried to a jury which had not been able to agree on a verdict.

■ Refusal of an insurance company "in bad faith" to pay means in Georgia a frivolous and unfounded denial of liability. If there is any reasonable ground for contesting the claim there is no bad faith. Pearl Assurance Company v. Nicols, 73 Ga.App. 452, 37 S.E.2d 227. See also, Hanover Fire Insurance Company of New York v. Argo, supra.

By the undisputed terms of the policy and similarly undisputed facts as to tardiness of reports, the tardiness factor could not work a reduction of the verdict.

Affirmed on both direct and cross appeals.

the policy and a finding has been made that such refusal was in bad faith, the insurer shall be liable to pay such holder, in addition to the loss, not more than 25 per cent. of the liability of the insurer for the loss and all reasonable attorney's fees for the prosecution of the case against the insurer. The amount of such reasonable attorney's fees shall be determined by the trial jury and shall be included in any judgment which is rendered in such action: Provided, however, such attorney's fees shall be fixed on the basis of competent expert evidence as to the reasonable value of such services, based on the time spent and legal and factual issues involved, in accordance with prevailing fees in the locality where such suit is pending: Provided, further, that the trial court shall have the discretion, if it finds such jury verdict fixing attorney's fees to be greatly excessive or inadequate, to review and amend such portion of the verdict fixing attorney's fees without the necessity of disapproving the entire verdict. The limitations contained in this section in reference to the amount of attorney's fees are not controlling as to the fees which may be agreed upon by the plaintiff and his attorney for the services of such attorney in the action against the insurer. (Acts 1960, pp. 289, 502; 1962, p. 712.)"