Mrs. Mae Hester BOHANNON,
Plaintiff-Appellee,

v.

MANHATTAN LIFE INSURANCE
COMPANY, Defendant-Third-Party
Plaintiff-Appellant,

v.

JACKSON'S ATLANTA READY MIX
CONCRETE COMPANY, INC., et al.,
Third-Party Defendants-Appellees.

No. 75–2173.

United States Court of Appeals,
Fifth Circuit.

July 13, 1977.

Rehearing Denied Sept. 1, 1977.

Cubbedge Snow, Jr., John C. Edwards, Macon, Ga., for appellant.

Denmark Groover, Jr., Gray, Ga., for M. H. Bohannon.

Fletcher Thompson, T. Jerry Jackson, Atlanta, Ga., for Jackson's Atlanta Ready Mix, etc.

J. Thomas Vance, David Tisinger, Carrollton, Ga., for A. P. Jackson.

Before TUTTLE, GOLDBERG and RONEY, Circuit Judges.

RONEY, Circuit Judge:

Sued by a widow for the $100,000 face amount of a group life insurance policy issued on her husband's life, the defendant life insurance company brought an "if we lose" third-party complaint against the shareholder-officers of the insured's corporate employer for recovery of the policy proceeds already paid to them. The district court directed a verdict for the widow giving her the full amount of the policy proceeds, and directed a second verdict against the insurance company prohibiting recovery of the policy proceeds already paid to the shareholders. The court then submitted to the jury the widow's claim for punitive damages and entered a judgment in accordance with the jury's verdict finding bad faith refusal on the part of the insurance company to pay the widow's claim. The net result of the litigation was the insurance company's paying almost double the face amount of the policy, plus punitive damages, attorney's fees, and interest. Finding that the district court should have submitted to the jury the verdicts that it directed, and should have directed the verdict that it submitted, we reverse.

A simplified version of the facts will suffice to form a backdrop for this discussion. Jackson's Atlanta Ready Mix Concrete Company, Inc., the employer, wanted to obtain $100,000 life insurance coverage on each of its four officers. Because at least one of the officers was medically uninsurable, it was necessary for the company to take out a group policy in excess of $1,000,000 spread over fifty employees to obviate medical examinations. To reach this amount two non-officer employees were insured for $100,000, but to eliminate the extra advantage over other employees to the two involved, the company was to be named as beneficiary of any amount over $10,000 (later increased to $20,000). Finding that the company, as employer, could not be the named beneficiary under Georgia law, the four shareholder-officers decided to have themselves named as beneficiaries of the excess amount.

Mr. W. F. Bohannon, general manager of two of the company's plants, was one of the two non-officer employees insured for $100,000. On his death, Manhattan Life Insurance Company, the insurer, paid his widow $20,000 on the basis of proofs of claim and documents submitted to it. The four shareholders received the balance of the policy proceeds. Subsequently, Mrs. Bohannon discovered that the original group enrollment card signed by her husband had named her as beneficiary of the full $100,000. Mr. Bohannon had thereafter signed a change-of-beneficiary form in blank, which was later filled in with the shareholders' names and retained in the company's files. Alleging that such action did not effectively remove her as beneficiary of the additional $80,000, Mrs. Bohannon filed suit against the insurance company. The insurance company asserted a third-party claim against the four shareholder-recipients of the policy proceeds in order to prevent double payment on the policy.

I. *Shareholders as Beneficiaries of a Group Policy Under Georgia Law*

An underlying issue presented by this case is the validity under Georgia law of an insured employee's designation of the sole shareholders and officers of his corporate

employer as beneficiaries of a policy of group life insurance. The Georgia Code provides that a policy of group life insurance issued to an employer to insure its employees "for the benefit of persons *other than the employer*" must meet certain requirements. Ga.Code Ann. § 56–2701(1) (1977). This provision prohibits an insured employee from naming "the employer" as beneficiary of a group policy. A finding that this statutory provision includes the individual Jacksons, as well as the company, as the "employer" would render their designation as beneficiaries unenforceable, whether or not Mr. Bohannon intended to designate them as beneficiaries. *Cf. Carruth v. Aetna Life Ins. Co.*, 157 Ga. 608, 122 S.E. 226 (1924). The district court interpreted the statute to encompass the sole shareholders of the employer corporation within the meaning of "employer." It appears the district court was in error.

No Georgia cases have ruled directly on this point, nor is the term "employer" defined by the Code. The general rule is that, in the absence of a statutory or policy provision restricting the class of persons who can be named as beneficiaries, the employee may name his choice as a beneficiary of a group life insurance policy. 19 *Couch on Insurance* 2d § 82:71 (1968). The only statutory restriction placed on who may be designated as beneficiary under a group life insurance policy is found in Ga.Code Ann. § 56–2701(1), interpreted to mean that the employer may not be the beneficiary. No policy restrictions are present in this case.

Thus the Court is confronted with the question of whether the shareholder-officers of a corporate employer are included within the scope of the term "employer," as used in the Georgia statute, so as to prohibit an insured employee from naming them as beneficiaries of a group life insurance policy.

Georgia has provided that in the construction of all statutory enactments the "ordinary signification shall be applied to all words," except words of art or words connected with some trade or subject-matter that gives them a special meaning. Ga. Code Ann. § 102–102(1) (1968).

Using its ordinary meaning, the corporation, not the shareholders, was clearly the "employer" of Mr. Bohannon in this case. No case has been found indicating that the word "employer" as used in Georgia law has any special meaning. A court should never by construction add to, take from, or vary the meaning of unambiguous words in a statute, but should keep before it the difference between application and construction. *Brooks v. Brooks*, 185 Ga. 549, 195 S.E. 869 (1937). No facts in this case indicate that the corporation should be treated as the *alter ego* of the shareholders, so that the corporate form should be ignored and the shareholders treated as the employer. *Cf. Trans-American Communications, Inc. v. Nolle*, 134 Ga.App. 457, 214 S.E.2d 717 (1975). The Jacksons, as individuals, had none of the legal ties to Bohannon associated with an employer-employee relationship. Nor are there any facts to negate application of the Georgia law that shareholders are not responsible for corporate obligations. *See Independent Gasoline Co. v. Bureau of Unemployment Compensation*, 190 Ga. 613, 10 S.E.2d 58, *cert. denied*, 311 U.S. 707, 61 S.Ct. 175, 85 L.Ed. 459 (1940); *Green v. Atlanta Barbers' Supply Co.*, 169 Ga. 805, 151 S.E. 504 (1930); *Scroggins v. Ridge Nassau Corp.*, 135 Ga.App. 547, 218 S.E.2d 448 (1975); *Griffin v. Burdine*, 89 Ga.App. 391, 79 S.E.2d 562 (1953); *Branham v. Louisville & Nashville R.R. Co.*, 69 Ga. App. 212, 24 S.E.2d 845 (1943). Thus the shareholders here were not responsible for any of the corporation's obligations to Bohannon as his employer, such as his salary or fringe benefits, or the payment of premiums on the group policy under consideration.

The word employer is used throughout the statute in the context of the policyholder. Here the corporation was the policyholder, not the shareholders. The shareholders had no right or interest in the group policy as policyholders. Only the corporation through its agents could exercise the statutory and contractual rights of the employer-policyholder. *Cf. Dale v. City*

*Plumbing & Heating Supply Co.*, 112 Ga. App. 723, 146 S.E.2d 349 (1965).

An exception to the requirement that statutory words be given their ordinary meaning is found when such construction would plainly frustrate the legislative purpose. Assuming an ascertainable legislative intention, words should be construed so as to give full effect thereto. *See Perry v. State*, 54 Ga.App. 410, 187 S.E. 895 (1936). A construction which will give intended effect to a statute is to be preferred to a construction which will necessarily destroy it. *See Wellmaker v. Terrell*, 3 Ga.App. 791, 60 S.E. 464 (1908). We have been unable to ascertain any legislative intent that would necessarily be frustrated if the word employer is restricted to the legal employer of the insured in this case.

There is no legislative history indicating the legislators' intent. Presumably, however, this statutory restriction serves the dual purposes of preserving the intended benefits of group insurance for the insured employees, and guarding against wagering contracts. Group life insurance is considered to be primarily for the benefit of the employees. *Mandeville Mills v. Milam*, 39 Ga.App. 768, 148 S.E. 418 (1929). It provides coverage on the lives of all employees of an employer at a lower premium than generally available on individual policies due to the administrative economies involved in writing a single, blanket policy. *McFarland v. Business Men's Assurance Co.*, 105 Ga.App. 209, 124 S.E.2d 432 (1962); *see Aetna Life Ins. Co. v. Messier*, 173 F.Supp. 90, 96 (M.D.Pa.1959). As an exception in the Georgia statute, the consent of the insured is not required for the placement of group insurance. Ga.Code Ann. § 56–2407 (1977). Often individuals who would not otherwise have life insurance are covered by a group policy. Since group insurance is often regarded as an element of compensation or bonus to an employee in addition to his salary, the Georgia Legislature, in its regulation of the insurance business, apparently deemed it in the public interest to ensure that the employees could freely designate the beneficiaries of their group insurance.

The second purpose would seem to be to prevent wagering, as accomplished by the insurable interest requirement in individual life insurance policies. *See Carruth v. Aetna Life Ins. Co.*, 157 Ga. 608, 122 S.E. 226 (1924). The Georgia Code provides that, before a person can take out life insurance, he must have an insurable interest in the life of the insured. Ga.Code Ann. §§ 56–2404, –2501 (1977). An individual has an unlimited insurable interest in his own life and may name whomever he pleases as beneficiary regardless of whether the beneficiary has an insurable interest. Ga.Code Ann. § 56–2404(2) (1977); *see Theus v. Bankers Health & Life Ins. Co.*, 216 Ga. 377, 116 S.E.2d 573 (1960); *Clements v. Terrell*, 167 Ga. 237, 145 S.E. 78 (1928). For an individual other than the insured to have an insurable interest, however, a reasonable expectation of pecuniary advantage through the continued life of the insured and consequent loss by reason of his death must be present. Ga.Code Ann. § 56–2404(1) (1977); *McFarlane v. Robertson*, 137 Ga. 132, 73 S.E. 490 (1911); *National Life & Accident Ins. Co. v. Parker*, 67 Ga.App. 1, 19 S.E.2d 409, 422 (1942). As to whether an employer has an insurable interest in the life of an employee, the rule in Georgia is that such an interest does not arise by virtue of the employment relationship alone. Rather, the courts look to the nature of employment, the services rendered by the employee, their importance to the business, and the character and particular ability of the employee to determine whether an employee's death would reasonably be expected to result in substantial pecuniary loss to the employer. *Turner v. Davidson*, 188 Ga. 736, 4 S.E.2d 814 (1939). Group policies are an exception to this rule and can cover all employees of an employer without regard to whether the employer would have an insurable interest on each individually. By preventing the employer from being the beneficiary, the evil that might otherwise be perpetrated by lifting the insurable interest requirement is avoided. 19 *Couch on Insurance* 2d § 82:11 (1968).

While designation of the sole shareholder-officers of a corporation arguably could conflict with the statutory scheme, the facts of the instant case do not support that conclusion. Nothing in the record indicates that the four Jacksons sought to enter into a wagering contract by procuring a group life insurance policy on the employees of Jackson's Atlanta Ready Mix Concrete Company. The company's acquisition of the insurance was motivated by a desire to obtain $100,000 coverage on each of the Jacksons, at least one of whom was medically uninsurable. Group coverage offered the obvious advantage of not requiring a medical examination. The statute required that Bohannon be treated equitably with other employees. "The amounts of insurance under the policy must be based upon some plan precluding individual selection either by the employees or by the employer or trustee." Ga.Code Ann. § 56–2701(1)(d) (1977). Because of the disproportionate amount of coverage needed on two of its key employees to meet the underwriting minimum of $1,000,000, the Jacksons sought to have themselves named as beneficiaries of the excess amount of coverage. Furthermore, the Jacksons never intended to deprive Mr. Bohannon or his beneficiaries of proceeds which should have been theirs, for they never planned on furnishing their employees with more than a maximum of $20,000 group coverage, which seemed to them a reasonable amount, particularly in light of the coverage already provided all employees. To implement an insurance plan that would increase Mr. Bohannon's coverage by $20,000 was for his benefit. Had the company wanted, it probably could have procured an individual policy on Mr. Bohannon's life and named the company as beneficiary, since he was a key employee of the company.

Absent an express statutory prohibition or compelling reason for expanding the term "employer" to include corporate shareholders and officers, prudence requires adherence to the general rule of statutory construction of giving words their ordinary meanings. Such a construction limits the effect of the statutory prohibition to Bo-

hannon's employer, the company. To hold otherwise would indeed not be "construction" of a statute, but an "application" thereof in a manner that the Georgia Legislature could easily have provided if it so intended. Designation of the Jacksons as beneficiaries of the policy in question did not render it invalid.

## II. *The Widow's $80,000 Claim*

The district court erred in directing a verdict in favor of the plaintiff-widow. First, the effectiveness of the change-of-beneficiary form signed in blank by the insured presented a material question of fact for the jury of whether Mr. Bohannon intended to change the beneficiary from his wife to whomever his employment might designate on the blank change-of-beneficiary form. Second, there is a factual question as to whether Mrs. Bohannon signed the claimant's statement for $20,000 with full knowledge of the facts, such as to constitute waiver or estoppel. This question also should have gone to the jury.

■ A change-of-beneficiary is effective when it is clear that the insured intends a change, has a right to make a change, and takes reasonable steps to bring about a change. 19 *Couch on Insurance* 2d § 82:76 (1968). Generally, substantial compliance with these conditions is sufficient. *West v. Pollard*, 202 Ga. 549, 43 S.E.2d 509 (1947); 5 *Couch on Insurance* 2d § 28:72 (1960). This Court has recognized that a change-of-beneficiary provision should be liberally construed to effectuate the insured's intentions in making a change. *Norris v. Norris*, 145 F.2d 99 (5th Cir. 1944).

■ Mr. Bohannon clearly had the right to change the beneficiary. Section VI of the policy issued to Jackson's Ready Mix on Mr. Bohannon's life stated that the individual may change his beneficiary "upon satisfactory written request." The written request was never received by Manhattan prior to Mr. Bohannon's death. Since the change-of-beneficiary form was executed in blank by Mr. Bohannon, the factual question of whether he intended to change the

beneficiary should have been determined by the jury. If the jury were to find that he did intend to make this change, then it would have to decide whether he had taken sufficient steps to constitute such a change. Even though Manhattan never received notice of the change until after Mr. Bohannon's death, that fact does not preclude substantial compliance with the policy provision, so that Mrs. Bohannon, as the original beneficiary, would be foreclosed from objecting.

■ Under Georgia law an original beneficiary cannot object if an insurance company waives compliance with a policy provision prescribing the method for changing a beneficiary, since this provision is solely for the benefit of the insurer. *Blount v. Life Ins. Co. of Georgia*, 139 Ga. App. 238, 228 S.E.2d 140 (1976); *Mitchell v. Mitchell*, 126 Ga.App. 664, 191 S.E.2d 587 (1972); *Barrett v. Barrett*, 173 Ga. 375, 160 S.E. 399 (1931), *aff'd*, 177 Ga. 190, 170 S.E. 70 (1933); *Arrington v. Grand Lodge*, 21 F.2d 914 (5th Cir.), *cert. denied*, 276 U.S. 617, 48 S.Ct. 213, 72 L.Ed. 733 (1927) (applying Georgia law). This rule, however, is subject to exception when the original beneficiary's rights have become vested due to the death of the insured. Thus Mrs. Bohannon could contest the effect of the change-of-beneficiary form signed by her husband in blank and retained by his employer until after his death. *See Wilbur v. Bankers Health & Life Ins. Co.*, 208 Ga. 401, 66 S.E.2d 918 (1951); *Loyd v. Loyd*, 203 Ga. 775, 48 S.E.2d 365 (1948).

Relying on theories of waiver and estoppel, Manhattan asserted alternatively that, even if Mrs. Bohannon was free to challenge the change of beneficiary, she cannot bring this action because of her sworn statement that she was aware of the February 14, 1969 change of beneficiary and that her claim was limited to $20,000. The sworn statement, prepared by Jackson's Ready Mix's attorney at the request of Manhattan, never mentioned that the full amount of the policy was $100,000. At trial Mrs. Bohannon claimed that, at the time she executed this statement, she did not have knowledge of this policy insuring her husband's life for $100,000.

■ Although under Georgia law one cannot waive a right or benefit without full knowledge of that which he is waiving, *Jones v. Roberts Marble Co., Inc.*, 90 Ga. App. 830, 84 S.E.2d 469 (1954); *Bryant v. Continental Cas. Co.*, 58 Ga.App. 518, 199 S.E. 343 (1938), and knowledge of the real facts is essential to the doctrine of equitable estoppel, *Bell v. Studdard*, 220 Ga. 756, 141 S.E.2d 536 (1965), knowledge may be actual or constructive. *See* 28 Am.Jur.2d, *Estoppel and Waiver* §§ 40, 158 (1966). Georgia Code Ann. § 37–116 (1962) provides:

> Notice sufficient to excite attention and put a party on inquiry shall be notice of everything to which it is afterwards found such inquiry might have led. Ignorance of a fact, due to negligence, shall be the equivalent to knowledge, in fixing the rights of parties.

It was for the jury to decide whether Mrs. Bohannon executed the documents with sufficient information to put her on notice of the policy limits she would have discovered had she inquired.

■ In connection with Mrs. Bohannon's claim, Manhattan asserts that the trial court improperly refused to admit into evidence a letter from Jackson's Ready Mix to Mr. Bohannon regarding execution of the change-of-beneficiary form. The record is confused as to who was offering this letter, and why. These points are critical to consideration under the Dead Man's Statute, Ga.Code Ann. § 38–1603 (1974), which relates to the competency of witnesses, not the admissibility of documentary evidence as such. *See Prothro v. Walker*, 202 Ga. 71, 42 S.E.2d 114 (1947); *Glo-Ann Plastic Indus., Inc. v. Peak Textiles, Inc.*, 134 Ga.App. 924, 216 S.E.2d 715 (1975). As to admissibility, appellant argues *Barbre v. Barbre*, 192 Ga. 385, 15 S.E.2d 489 (1941), while appellee relies on *Volunteer State Life Ins. Co. v. McGinnis*, 150 Ga. 162, 103 S.E. 168 (1920). We leave any controversy over this matter to the initial decision of the district court on retrial. No decision by us would make the letter automatically admissible.

It must be properly authenticated and otherwise admissible. A decision on this record as to the admissibility of the letter, if offered by Manhattan upon a proper predicate, would be nothing more than advisory.

### III. *The Widow's Punitive Damage Claim*

■ The trial court submitted the question of bad faith damages to the jury, which awarded $10,000 punitive damages. The parties had agreed on a $15,000 attorney's fee to follow the result of the jury verdict. A careful review of the record reveals no evidence upon which a jury could find bad faith. Manhattan was entitled to a directed verdict on this point as a matter of law.

Georgia Code Ann. § 56–1206 (1977) provides that an insurer shall be liable for damages and attorney's fees if in bad faith it refuses to pay a demand by the holder of the policy. Georgia case law has construed "bad faith" refusal to mean a frivolous and unfounded denial of liability by the insurance company. If any reasonable basis exists for contesting a claim, there is no bad faith. *American Cas. Co. v. Ten Tex Corp.*, 357 F.2d 269 (5th Cir. 1966) (applying Ga. law); *State Farm Mut. Automobile Ins. Co. v. Harper*, 125 Ga.App. 696, 188 S.E.2d 813 (1972). The burden was on Mrs. Bohannon to prove bad faith on the part of Manhattan. *Life Ins. Co. of Georgia v. Burke*, 219 Ga. 214, 132 S.E.2d 737 (1963). After payment of the proceeds according to the change-of-beneficiary form and claimants' statements submitted by the Jacksons and Mrs. Bohannon, Manhattan's denial of further liability to Mrs. Bohannon could not be considered frivolous or unfounded. Even though Manhattan may ultimately be found liable to Mrs. Bohannon for the full amount of the policy, it had a reasonable basis for contesting her claim and did not act in bad faith in so doing. This issue should not have gone to the jury.

### IV. *The Insurance Company's Third-Party Claim*

■ In the event that it is decided on retrial that the widow was the proper beneficiary of the policy, the insurance company's recovery as to the $80,000 already paid to the four shareholder-officers depends on whether its payment to the Jacksons can be considered as voluntary. This question hinges on whether the insurance company had knowledge of all the facts when it made payment, or failed to take sufficient steps to ascertain the true facts. This question should have been submitted to the jury with proper instructions.

■ The trial court relied on Ga.Code Ann. § 20–1007 (1965), which provides in part:

> Payments of taxes or other claims, made through ignorance of the law, or where the facts are all known, and there is no misplaced confidence and no artifice, deception, or fraudulent practice used by the other party, are deemed voluntary, and cannot be recovered back, unless [exceptions stated not relevant to present case] . . . .

The Georgia courts have held that this section applies not only when one pays money with knowledge of all the facts but also when one pays by mistake without a valid reason for failing to ascertain the truth. *See, e. g., Atlanta Coach Co. v. Simmons*, 184 Ga. 1, 7, 190 S.E. 610, 614 (1937); *Barker v. Federated Life Ins. Co.*, 111 Ga.App. 171, 141 S.E.2d 206 (1965). The courts have placed the burden on the one seeking to recover to show that the payment was not made voluntarily because at the time of payment material facts were not known, or because a valid reason existed for the failure to ascertain the truth. *New York Life Ins. Co. v. Williamson*, 53 Ga.App. 28, 184 S.E. 755 (1936). Having the burden of proof, Manhattan introduced evidence from which a jury could find that Manhattan did not have full knowledge of all the facts, but had taken sufficient steps to ascertain the truth so that its payments to the Jacksons were not voluntary within the meaning of Ga.Code Ann. § 20–1007. The question relating to the voluntariness of the claim should have been decided by a jury.

The judgment of the district court is reversed, and the case is remanded for a new jury trial on Mrs. Bohannon's claim against Manhattan and on Manhattan's third-party claim against the Jacksons, and for entry of judgment in favor of the insurance company on the claim against it for punitive damages and attorney's fees.

REVERSED, AND REMANDED IN PART.