[Civ. No. 18327. First Dist., Div. One. Mar. 1, 1960.]

Estate of ROSALIE J. AUSSERESSES, Deceased. FRED-ERICK D. AUSSERESSES et al., Appellants, v. JOSEPH S. QUAN et al., Respondents.

Connolly & Farbstein for Appellants.

Leonardo S. Bacci, Robert K. Fong and J. Joseph Sullivan for Respondents.

DUNIWAY, J.—In this will contest, based solely upon undue influence, the court below granted a nonsuit and contestants appeal. We find that the court's decision was correct. ''It is now settled that '. . . when the contestant has shown that the proponent of a will sustains a confidential relationship toward the testator, and actively particpates in procuring the execution of the will, and unduly profits thereby, the burden then shifts to the proponent to prove that the will was not induced by his undue influence.' (*Estate of Pellegrini,* 138 Cal.App.2d 143, 145 [291 P.2d 558] ; *Estate of Rugani,* 108 Cal.App.2d 624, 629 [239 P.2d 500] ; *Estate of Abert,* 91 Cal.App.2d 50, 58 [204 P.2d 347].)'' (*Estate of Gagliasso,* 150 Cal.App.2d 65, 68 [309 P.2d 513].) The earlier cases to the same effect are cited in *Estate of White,* 128 Cal. App.2d 659, at pages 668-669 [276 P.2d 11].

We assume, without deciding, that sufficient evidence was offered to show that the proponents of the will, Joseph S. Quan and his wife Sara Wong Quan, sustained a confidential relationship toward the testatrix (see *Estate of Rugani, supra,* 108 Cal.App.2d 624, 630, and cases cited), and that they unduly profited by the will. (But see *Estate of Arnold,* 16 Cal.2d 573, 588 [107 P.2d 25].) The evidence to sustain these conclusions is weak. We cannot find any evidence in the record, however, that would support a finding that either of them actively participated in procuring the execution of the will. (*Estate of Arnold, supra,* 16 Cal.2d 573, 581.)

Under the often stated rule relating to nonsuits, we must view the evidence in the light most favorable to the contestants, accepting as true all evidence favorable to them, drawing from such evidence all legitimate inferences favorable to them, and disregarding all conflicting evidence. We are also required to apply the rule that activity in procuring the execution of a will may be established by cir-

cumstantial evidence. (*Estate of Gagliasso, supra,* 150 Cal. App.2d 65 and cases cited at p. 69.) ▮ We cannot, however, assume the existence of facts not proved, either directly or by reasonable inference from facts proved. Neither absence of evidence, nor mere suspicion, is a substitute for evidence.

The evidence, viewed in the foregoing light, reveals the following as to the activities of the proponents in procuring the execution of the will. Contestants Frederick and Robert Ausseresses are not blood relations, but nephews of decedent by marriage. Proponents are strangers to the blood and family of decedent, but became, over a period of some years, and particularly during the last six months of her life, her closest friends and advisors. However, she did not live with them, and was not incompetent. The contested will was executed on May 24, 1956, and the testatrix died on June 22, 1956, aged 79. It names Joseph S. Quan as executor, and disposes of the decedent's property as follows: To Sara Wong Quan certain jewelry; to both the Quans her home at 430 17th Avenue, San Francisco; to contestant Frederick $3,000; to contestant Robert $3,000; to William M. Ausseresses, not a relative and not a contestant, nothing; to William's son Diderot $2,200, owed to testatrix by William; and the residue to the Quans. All other heirs are specifically disinherited. The value of the estate is $58,000.

The will was drawn by Attorney Bacci, who was also attorney for the Quans. He had drawn three prior wills for testatrix. The preceding will was dated November 23, 1955. It also named Joseph Quan executor, and left the jewelry to Mrs. Quan and the home to the two Quans. It left the residue to contestants, left nothing to William, directed that the executor collect from him what he owed testatrix and specifically excluded all other heirs. The next preceding will was dated April 27, 1955. It, too, named Joseph Quan executor. It left to Sara Quan the jewelry, and to contestants the residue, which would include the home, because it was not specifically mentioned. In other respects, it is like the November, 1955, will. The next preceding will was dated September 15, 1954, but, although identified as an exhibit, was not offered in evidence, nor was an earlier will of July 23, 1951, similarly identified, not drawn by Bacci, presumably because the terms of these wills would be anything but helpful to appellants.

Contestants produced 15 witnesses. The only testimony by any of them brought to our attention by appellants and relat-

ing to the procuring of the execution of the will is as follows: Mrs. Virgel Davis is the mother of the two contestants and of William, a half-brother of contestants, through her, not through the Ausseresses side. She says that on May 25, 1956, which is the day after the execution of the will, testatrix told her that "Mr. Quan had me out on business yesterday and I had to beg him to bring me home, . . . he like to killed me." This was a reason given by the testatrix for not going on a trip with the witness. Marion Ricommi, a cousin of testatrix, eavesdropped on two telephone conversations sometime in May, 1956, between testatrix and Sara Quan, and heard Mrs. Quan repeatedly tell testatrix "not to say anything, not to talk." In the same month, day not fixed, testatrix told her that Joseph Quan was taking her to an attorney, and the witness saw Mr. Quan bring her home. Upon coming home, testatrix told her that Mr. Quan had told the attorney to collect from William Ausseresses some money that William owed testatrix, as the latter needed it. Other evidence indicates that this may have been in June, after the will was executed. Testatrix had received a most scurrilous letter from William some time earlier. William is not a contestant. Irene Jackson worked for testatrix at her home for about two weeks before she went to the hospital on June 12. She once heard Mr. Quan make a telephone call "to a lawyer" in which Mr. Quan said "something about the niece." "There was a few words dropped that I knew it was a lawyer." "Something about the will." The testatrix said to Mrs. Jackson that "Mr. Quan had changed her lawyer or got his lawyer." It should be noted that the will was executed May 24, more than two weeks before June 12.

On the other hand, Mr. Bacci, purportedly examined under Code of Civil Procedure, section 2055, testified that on the morning of May 21, 1956, testatrix telephoned for an appointment, came into his office alone that afternoon and told him what she wanted in the will. He then prepared it, and she came back alone on May 24, and executed it, and took it with her. No one came with her, so far as he knew, on either occasion. He was told by testatrix not to mention the contents of the will to anyone, including the Quans, and he did not do so. We assume, without deciding, that section 2055 applies, and that therefore all of this testimony could be disregarded by the trier of fact, but to do so would not help the contestants. Without it, there would be no evidence bearing upon the subject. ■ "Disbelief does not create affirmative evidence

to the contrary of that which is discarded." (*Estate of Bould,* 135 Cal.App.2d 260, 264 [287 P.2d 8, 289 P.2d 15].)

The cases are unanimous in holding that such evidence as was presented here is insufficient to go to the jury on the question of active participation in procuring the execution of the will. ▓ "Some incidental activity in the execution, rather than the preparation of the will, is not enough to swing the burden." (*Estate of Bould, supra,* 135 Cal.App.2d 260, 275.) ▓ The necessary active participation cannot be inferred from the fact that the proponent accompanied the testatrix to the attorney's office. (*Estate of Bould, supra; Estate of Lingenfelter,* 38 Cal.2d 571, 586 [241 P.2d 990]; *Estate of Anderson,* 185 Cal. 700, 717 [198 P. 407]) or that the proponent selected the attorney (*Estate of Latour,* 140 Cal. 414, 424 [73 P. 1070, 74 P. 441]; *Estate of Anderson, supra; Estate of Llewellyn,* 83 Cal.App.2d 534, 565 [189 P.2d 822, 191 P.2d 419]; *Estate of Hull,* 63 Cal.App.2d 135, 139, 142 [146 P.2d 242]), or that the proponent was present at the execution of the will, a fact not proved here (*Estate of Jacobs,* 24 Cal.App.2d 649, 652 [76 P.2d 128]; *Estate of Lombardi,* 128 Cal.App.2d 606, 608-609, 613 [276 P.2d 67]) or that the proponent was present when instructions were given as to the contents of the will, another fact not proved here. (*Estate of Easton,* 140 Cal.App. 367, 376 [35 P.2d 614]; *Estate of Morcel,* 162 Cal. 188, 197 [121 P. 733].) See also *Estate of Welch,* 43 Cal.2d 173, 180 [272 P.2d 512].

*Estate of Gagliasso, supra,* 150 Cal.App.2d 65, which is relied on by contestants, does not help them. The facts of that case were far more favorable to the contestants than here, and readily gave rise to an inference that the proponents did in fact procure the execution of the will. There was here no such total domination of the testatrix as was shown in that case, nor was there here any such activity in relation either to the will itself or to the attorney as there appeared.

Affirmed.

Bray, P. J., and Tobriner, J., concurred.

A petition for a rehearing was denied March 22, 1960, and appellants' petition for a hearing by the Supreme Court was denied April 26, 1960.