[Civ. No. 9899. Third Dist. May 29, 1961.]

Estate of A. G. TRABUCCO, Deceased. DOROTHY M. GEORGE, Appellant, v. LOUIS CAVANNA et al., Respondents.

*Assigned by Chairman of Judicial Council.

T. N. Petersen for Appellant.

C. Ray Robinson, W. Eugene Craven, Charles E. Goff and William B. Boone for Respondents.

VAN DYKE, P. J.—This is an appeal by contestant, Dorothy M. George, from an order admitting decedent's will to probate after the court had granted the proponents' motion for judgment notwithstanding the verdict in a will contest.

Decedent, Gus Trabucco, died October 9, 1958, in Merced, where he had lived for approximately 50 years. He left a formal will, duly executed and dated May 6, 1958, by which he gave all his property to respondents, Louis and Helen Cavanna, husband and wife, who were not related to him. They petitioned for probate of the will and appellant filed a contest before probate, setting up various grounds of contest, among which were duress, menace, fraud and undue influence. These latter are the only grounds which are the subject of this appeal. At the close of all the evidence and under appropriate instructions the jury returned a verdict that the will had been procured by the undue influence of respondents, and had been executed under their duress and menace and through their fraud.

Gus Trabucco came to the United States from Italy in 1903. He went first to New York and shortly thereafter to Merced, California, where he continued to live up to the time of his death, except for one year spent in Lodi, California, in 1922, and for an extended trip to Europe in 1923. He was a bachelor. From 1921 to 1928 he and Louis Cavanna lived together. In 1928, when Louis married Helen, Gus moved into the new home set up by them and lived with them until he was removed to a hospital for an extended last illness of four or five months' duration. In the Cavanna home he had his own room with private bath. He took all his meals with the Cavannas and their children. There was a close family relationship among the group. Gus and Louis were in business together for a long time as partners and also made investments together. Gus accumulated considerable property. In 1955 he deeded two lots to the two daughters of respondents; he also deeded six lots to respondents, reserving a life estate for himself.

Assuming the existence of a confidential relationship between Gus and the respondents, present also in *Estate of Robbins,* 172 Cal.App.2d 549 [342 P.2d 933], the evidence is still insufficient to measure up to the test of undue influence. This case is sufficiently similar to *Estate of Robbins* to justify quotation from the opinion in that case. ▮ Therein this court said, at page 554:

''We think it unnecessary to relate further details concerning the evidence on the issue of undue influence, because we think that, assuming that all the factors to be considered in resolving the issue of undue influence were present and proved save one, the failure to prove that one requires an

affirmance of the court's action in refusing to submit to the jury the issue of undue influence. Influence to be undue so as to justify the voidance of a will must be such as in effect to destroy the testator's free agency and substitute for his own another person's will. ■ It must be shown that pressure was brought to bear directly on the testamentary act. The influence must be shown to have been directed to procuring the will and must have amounted to coercion, destroying free agency on the part of the testator. Proof of general influence alone is insufficient. ■ Proof of opportunity to influence the making of the will, even coupled with an interest or motive to do so, is insufficient. (*Estate of Arnold*, 16 Cal.2d 573, 577 [107 P.2d 25].) ■ It was said in that case: ' "The unbroken rule in this state is that courts must refuse to set aside the solemnly executed will of a deceased person upon the ground of undue influence unless there be proof of 'a pressure which overpowered the mind and bore down the volition of the testator at the very time the will was made.' " ' (See also *Estate of Lingenfelter*, 38 Cal.2d 571 [241 P.2d 990], and *Estate of Goddard*, 164 Cal.App.2d 152 [330 P.2d 399].) ■ A will cannot be overturned on the mere speculation or suspicion that undue influence may have been used to procure it. (*Estate of Gleason*, 164 Cal. 756, 765 [130 P. 872] ; *Estate of Welch*, 43 Cal.2d 173 [272 P.2d 512].) Mere general influence, however strong and controlling, not brought to bear upon the testamentary act, is not enough ; it must be influence used directly to procure the will, must amount to coercion destroying free agency. (*Estate of Welch, supra,* p. 175.) ■ 'It is not sufficient for a contestant to merely prove circumstances consistent with the exercise of undue influence; but before the will can be overthrown the circumstances must be *inconsistent* with voluntary action on the part of the testator.' (*Estate of Welch, supra,* p. 178.) "

■ This record is utterly devoid of any proof that the will of decedent was procured through the undue influence of respondents. It was not shown that either of them was present at the execution of the will, and, on the contrary, it was shown by appellant that the will was executed in the private room of decedent in the home of the Cavannas in the presence of, and witnessed by, a maid employed by the Cavannas and by an attorney. No other persons were present. It is undisputed that when the will was executed decedent had testamentary capacity. Indeed, this latter was proved

by the testimony of the attending physician called as a witness by appellant who testified that just prior to the making of the will decedent was of sound mind and remained so for months thereafter and practically up to the time of his death in the hospital to which he was moved shortly after the will was executed. ■ There was testimony as to statements made by decedent that he had wanted to make a will for his collateral relations in this country and in Italy, and that Mrs. Cavanna would not let him do so; that Mrs. Cavanna compelled him to transfer all his property to the Cavannas and their children and would not let him make provision for his collateral relatives; that he had made a previous will which the Cavannas had discovered and concerning which they had become angry because he had not therein left all of his property to them. But none of these hearsay statements, admitted for the limited purpose of showing state of mind, constituted proof of any facts contained therein. (*Estate of Llewellyn,* 83 Cal.App.2d 534, 564 [189 P.2d 822, 191 P.2d 419]; *Estate of Gecht,* 165 Cal.App.2d 431, 446 [331 P.2d 1019]; *Estate of Weber,* 113 Cal.App.2d 160, 169-170 [247 P.2d 939]; *Estate of Luckenbach,* 205 Cal. 292, 299 [270 P. 961].)

The record is equally devoid of any evidence whatever that respondents subjected the testator to menace, duress or fraud.

The verdict of the jury in this case finds no support in the evidence and can serve only to illustrate how prone juries sometimes are to substitute their own will for that of the testator.

The order admitting the will to probate is affirmed. ■■ The purported appeal from the order granting the motion for judgment notwithstanding the verdict is dismissed as it is not an appealable order. (Prob. Code, § 1240; *Estate of Hettermann,* 48 Cal.App.2d 263, 275 [119 P.2d 788].)

Peek, J., and Schottky, J., concurred.

A petition for a rehearing was denied June 28, 1961, and appellant's petition for a hearing by the Supreme Court was denied July 26, 1961. Schauer, J., was of the opinion that the petition should be granted.