[Civ. No. 32302. Second Dist., Div. One. Aug. 16, 1968.]

Estate of FRED M. NIQUETTE, Deceased. FRANCES GRINNAN, Plaintiff and Appellant, v. GEORGE H. NIQUETTE et al., Defendants and Respondents.

Johnson, Robertson, O'Sullivan & Ladenberger, Don A. Ladenberger and Victor A. Gorham for Plaintiff and Appellant.

Bernard B. Laven and A. G. Ritter for Defendants and Respondents.

LILLIE. J.—The will of Fred M. Niquette named his brother George (respondent herein) executor and bequeathed him all of his estate except $500 to the Shriners' Hospital for Crippled Children. Contest was filed by a sister Frances Grinnan (appellant herein) and two nieces. The main ground of contest set up by Frances, on information and belief, is that the will was executed as a "direct result of the undue influence of George H. Niquette" in that George and decedent were brothers and both were directors and officers of Niquette's, Inc.; George actively assisted decedent, who was in poor health because of surgery, in the performance of his duties as president and director of the corporation, was decedent's constant business and social companion and enjoyed a confidential relationship with decedent; and George was active in the procurement of the will which, she "is informed and believes, substantially changed a prior testamentary plan of decedent pursuant to which [she] was a substantial beneficiary of decedent's estate." Answers were filed and George moved for summary judgment (§ 437c, Code Civ. Proc.) to dismiss the contest. The motion was heard on declarations and granted. Frances appeals from the judgment.

Fred M. Niquette died on December 18, 1966, leaving no surviving direct heirs, only collateral heirs—George, a brother, Frances, a sister, and two nieces (daughters of a deceased sister); he executed his will on September 22, 1965, and in addition to naming respondent executor and bequeathing him most of his estate, he provided, "I have intentionally omitted to provide herein for any of my heirs, . . . particularly my surviving sister, FRANCES GRINNAN, who I have adequately provided for outside of this Will." According to his counterdeclaration in support of the motion, Bernard B. Laven had known decedent since 1929 and had been attorney for Niquette's, Inc., since 1939; he prepared not only this will (September 22, 1965) for decedent but other wills; the sole direction in the preparation of the will was given to him by decedent and he prepared it in accord with his (decedent's) instructions; at no time prior to the preparation and execu-

tion of the will was there any discussion with respondent; decedent advised him he was changing the beneficiary on two insurance policies in the total sum of $10,000 from respondent to Frances and he (decedent) felt that this was adequate provision for Frances in exchange for bequeathing all of his stock in Niquette's, Inc.

A review of portions of her deposition and response to request for admissions reveals that Frances is unable to say what the acts of undue influence were and does not know of any acts of respondent in instructing or advising decedent to make the devises and bequests contained in his will or whether respondent knew of the terms of the will until after the death of decedent; does not know what facts she is going to allege when she takes the witness stand in court and knows of no person who was present or heard a conversation between respondent and decedent about the will; knew nothing about the execution of the will until after decedent died; knows nothing concerning how it came about that decedent changed his will or when he formed his intention to do so and knows nothing about instructions given to the attorney to change the will—she was not present, does not know who was present, does not know whether respondent gave any instructions to decedent as to how the will was to be drawn and does not know any person who knows that respondent gave instructions to the attorney or to decedent to eliminate her as a beneficiary under the will; knows respondent took decedent to and was with him in the office of William W. Lewis but does not know whether respondent knew the contents of the will but ''surmised'' he did. Frances claims that the acts of undue influence were ''through constant companionship and influence over Fred (decedent)'' but does not know what the acts of undue influence were or if respondent suggested decedent change his will or did any act in instructing or advising him; and that respondent was the constant business and social companion of decedent with whom he enjoyed a confidential relationship, decedent was in poor physical health and respondent assisted him in the performance of his duties as president of the corporation.

 Appellant's contention that the trial court erred in granting the motion for summary judgment is predicated chiefly on her argument that by counterdeclaration she asserted a confidential relationship existing between respondent and decedent and other facts giving rise to a presumption of

undue. influence. which placed on respondent the burden of rebutting the same at a trial.

"A summary judgment is proper only if (1) the affidavits in support of the moving party are sufficient, strictly construed, to sustain a judgment in his favor and (2) the affidavits filed by the opponent, liberally construed, do not show facts deemed by the judge hearing the motion sufficient to present a triable issue. (Code Civ. Proc., § 437c; *Stationers Corp.* v. *Dun & Bradstreet, Inc.,* 62 Cal.2d 412, 417-418 [1-7] [42 Cal.Rptr. 449, 398 P.2d 785].)

"As pointed out in *Stationers Corp.* v. *Dun & Bradstreet, Inc., supra,* 62 Cal.2d 412, 417 [3], 'The aim of the procedure is to discover, through the media of affidavits, whether the parties possess evidence requiring the weighing procedures of a trial.' " (*Towne Dev. Co.* v. *Lee,* 63 Cal.2d 147, 148 [45 Cal.Rptr. 316, 403 P.2d 724]; see also *Wilson* v. *Bittick,* 63 Cal.2d 30, 34-35 [45 Cal.Rptr. 31, 403 P.2d 159].)

Liberally construed, the counterdeclarations on behalf of contestant fail to show facts sufficient to present a triable issue; and those declarations in support of the motion, strictly construed, are sufficient to sustain a judgment in respondent's favor. Not one fact stated by Frances in her deposition, response to request for admissions or counterdeclaration establishes any act of undue influence or that there had been any pressure exerted by respondent or anyone else that overpowered the mind of decedent or that at the time of making his will his mind was subjugated to and dominated by respondent's desires and designs or that respondent did any act in procuring the will; she in fact conceded that she has no personal knowledge of any such undue influence and knows of no one who could testify to such effect. It is clear from her own words that on the witness stand in a trial she would be unable to state anything further in support of her claim of undue influence. "A will cannot be overturned on the mere speculation or suspicion that undue influence may have been used to procure it. (*Estate of Gleason,* 164 Cal. 756, 765 [130 P. 872]; *Estate of Welch,* 43 Cal.2d 173 [272 P.2d 512].)" (*Estate of Trabucco,* 192 Cal.App.2d 643, 646 [13 Cal. Rptr. 468]; *Estate of Robbins,* 172 Cal.App.2d 549, 554 [342 P.2d 933].) Similarly in *Estate of Nelson,* 227 Cal.App.2d 42 [38 Cal.Rptr. 459], contestant " 'admitted that her allegation of undue influence was based upon only supposition and that she had no personal knowledge about it. . . .' " (p. 48); the

court affirmed a summary judgment denying revocation of probate of a will and dismissed the contest.

The undue influence that compels invalidation of a will must be influence used directly to procure its execution and "must 'destroy the testator's free agency and substitute for his own another person's will.' (*Estate of Arnold* (1940) 16 Cal.2d 573, 577 [107 P.2d 25].) 'Evidence must be produced that pressure was brought to bear directly upon the testamentary act. . . . [The influence] must amount to *coercion* destroying free agency on the part of the testator.' (*Estate of Arnold, supra,* at p. 577; *Estate of Welch* (1954) 43 Cal.2d 173, 175 [272 P.2d 512]; *Estate of Lingenfelter, supra,* (1952) 38 Cal.2d 571 [241 P.2d 990].) '[T]he circumstances must be *inconsistent* with voluntary action on the part of the testator' *(Estate of Welch, supra,* at p. 178); and '[the] mere opportunity to influence the mind of the testator, even coupled with an interest or a motive to do so, is not sufficient' *(Estate of Welch, supra,* at p. 175).'' *(Estate of Fritschi,* 60 Cal.2d 367, 373-374 [33 Cal.Rptr. 264, 384 P.2d 656]; *Estate of Goetz,* 253 Cal.App.2d 107, 114-115 [61 Cal. Rptr. 181]; *Estate of Nelson,* 227 Cal.App.2d 42, 57-59 [38 Cal.Rptr. 459]; *Estate of Wright,* 219 Cal.App.2d 164, 168-169 [33 Cal.Rptr. 5]; *Estate of Trabucco,* 192 Cal.App.2d 643, 646 [13 Cal.Rptr. 468].)

It is not sufficient for a contestant to merely show circumstances consistent with the exercise of undue influence (*Estate of Fritschi,* 60 Cal.2d 367, 373 [33 Cal.Rptr. 264, 384 P.2d 656]; *Estate of Trabucco,* 192 Cal.App.2d 643, 646 [13 Cal.Rptr. 468]), that the proponent of the will and the testator were brothers (*Estate of Welch,* 43 Cal.2d 173, 178 [272 P.2d 512]; *Estate of Ferris,* 185 Cal.App.2d 731, 736 [8 Cal. Rptr. 553]) and that they were close social and business associates. Influence gained by kindness, gratitude or affection will not be regarded as "undue" if no imposition or fraud be practiced. (*Estate of Bould,* 135 Cal.App.2d 260, 272 [287 P.2d 8, 289 P.2d 15]; *Estate of Doty,* 89 Cal.App.2d 747, 755 [201 P.2d 823].) He must show " ' ' "a pressure which overpowered the mind and bore down the volition of the testator at the very time the will was made".' " *(Estate of Arnold,* 16 Cal.2d 573, 577 [107 P.2d 25]), or dominated or controlled the mind of the testator *(Estate of Ventura,* 217 Cal.App.2d 50, 58-60 [31 Cal.Rptr. 490]) and was brought to bear directly on the testamentary act *(Estate of Fritschi,* 60 Cal.2d 367, 373 [33 Cal.Rptr. 264, 384 P.2d 656]; *Estate of*

*Welch,* 43 Cal.2d 173, 178 [272 P.2d 512].) ▮ Here the
facts point to no more than general influence which, not
brought to bear upon the testamentary act, however control-
ling is not undue influence as will afford grounds for setting
aside the will of a person of sound mind. (*Estate of Donovan,*
140 Cal. 390, 394 [73 P. 1081].) Contestant admitted that the
testator was not of unsound mind at the time he made his
will.

Nowhere in the record do we find any issue upon which the
matter of contest may be tried unless it can be said that the
facts asserted by contestant create a presumption of undue
influence. Herein she invokes the presumption based on the
confidential relationship between respondent and decedent
and the fact that they were brothers, officers and directors of
the corporation and social and business companions, decedent
was in poor health and respondent aided him in the perform-
ance of his duties as president, and respondent was present
when the will was executed. Assuming all of the above facts to
be true, the presumption of undue influence is still not avail-
able to appellant. ▮ " 'For the presumption of undue influ-
ence to arise, it is not enough that a confidential or fiduciary
relationship shall have existed between the testator and the
person alleged to have exerted undue influence. There must
have been, in addition, some sort of activity or participation
in the execution or preparation of the will, as well as an
undue benefit given to the same or another person by the will
thus procured.' (53 Cal.Jur.2d, Wills, § 186, p. 434; accord:
*Estate of Fritschi, supra,* 60 Cal.2d 367, 373-374; *Estate of
Arnold, supra,* 16 Cal.2d 573, 581.) " (*Estate of Nelson,* 227
Cal.App.2d 42, 57 [38 Cal.Rptr. 459].) ▮ Thus it is
clear that to bring the presumption of undue influence into
play, the three elements—confidential relationship, active par-
ticipation of beneficiary in procuring the will and his undue
profit therefrom—must be present. (*Estate of Fritschi,* 60
Cal.2d 367, 376 [33 Cal.Rptr. 264, 384 P.2d 656]; *Estate of
Arnold,* 16 Cal.2d 573, 581 [107 P.2d 25]; *Estate of Graves,*
202 Cal. 258, 262 [259 P. 935]; *Estate of Garibaldi,* 57 Cal.2d
108, 113 [17 Cal.Rptr. 623, 367 P.2d 39]; *Estate of Goetz,*
253 Cal.App.2d 107, 116 [61 Cal.Rptr. 181]; *Estate of Tra-
bucco,* 192 Cal.App.2d 643, 645 [13 Cal.Rptr. 468]; *Estate of
Robbins,* 172 Cal.App.2d 549, 554 [342 P.2d 933].)

▮ While a confidential relationship existed between
respondent and decedent, absent in the record is any sugges-
tion that respondent was in any manner active or participated

in the preparation or execution of the will or that he received an undue benefit therefrom. There is no showing that he had any knowledge of the terms of either the prior will or the one offered for probate before its execution or that he coerced, intimidated, dominated or in any way controlled the mind of the decedent in the preparation or execution of his will. Appellant frankly states that she knows of no such activity on the part of respondent. Apparently the will was not executed in the office of, or at the time of its preparation by, decedent's attorney, Bernard Laven; nothing establishes that respondent was present at the time the will was prepared; and according to Laven's counterdeclaration, clearly undisputed, it was decedent alone who gave him instructions in the preparation of the will. Contestant proved by her own declaration and that of Bonnie Starheim that later the will was executed in the office of a Mr. Lewis where respondent was present, but nothing establishes that he did anything in procuring its execution. The necessary active participation cannot be inferred from the fact that respondent accompanied decedent to Lewis' office or was present at the execution of the will. (*Estate of Ausseresses*, 178 Cal.App.2d 487, 491 [3 Cal.Rptr. 124]; *Estate of Fritschi*, 60 Cal.2d 367, 376 [33 Cal.Rptr. 264, 384 P.2d 656].) ▆▆▆ Mere physical presence of a beneficiary at the execution of a will rather than at its preparation is not sufficient to give rise to the presumption. "Thus the court in *Estate of Bould* (1955) 135 Cal.App.2d 260 [287 P.2d 8, 289 P.2d 15], states: 'That activity must be in the preparation of the will. *Estate of Lombardi*, 128 Cal.App.2d 606, 612 [276 P.2d 67], quotes *Estate of Burns*, 26 Cal.App.2d 741 [80 P.2d 77], as follows: " '. . . where one who unduly profits by the will as a beneficiary thereunder sustains a confidential relation to the testator, *and has actually participated in procuring the execution of the will*, the burden is on him to show that the will was not induced by coercion or fraud. . . . However, the confidential relation alone is not sufficient. *There must be activity on the part of the beneficiary in the matter of the* preparation of the will.' " Some incidental activity in the execution, rather than the preparation of the will, is not enough to swing the burden. . . .' (P. 275.)" (*Estate of Fritschi*, 60 Cal.2d 367, 376 [33 Cal.Rptr. 264, 384 P.2d 656]; *Estate of Wright*, 219 Cal.App.2d 164, 170 [33 Cal.Rptr. 5.)

▆▆▆ Absent too is any suggestion that respondent unduly

profited from the will. To the contrary, instead of being named the beneficiary on decedent's insurance policies and receiving immediately upon decedent's death and free of inheritance tax, $10,000 cash therefrom as decedent originally provided then changed from respondent to Frances at the time he made his will, respondent will receive under the will, subject to probate and inheritance taxes, stock in a closed corporation which has little value except upon dissolution. Moreover, the provisions of the will are not unnatural as against appellant.

Putting together all of the circumstances related above, we do not find present either the element of noxious activity which is necessary to the tridental presumption (*Estate of Goetz*, 253 Cal.App.2d 107, 117 [61 Cal.Rptr. 181]) or that of undue profit to respondent under the will. Absent the presumption, there was nothing to be submitted to a trial. Thus, inasmuch as no genuine issue as to any material fact existed, the proceeding was in proper posture for disposition by summary judgment.

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.